ANN S. INFERRERA, administratrix,[1] *vs.* TOWN OF
SUDBURY & others.[2]

No. 90-P-58.

Middlesex. March 15, 1991. - July 22, 1991.

Present: KASS, GILLERMAN, & GREENBERG, JJ.

*Negligence*, Trespasser, One owning or controlling real estate. *Wilful,
Wanton or Reckless Conduct. Practice, Civil*, Summary judgment.

In an action arising from the death of a snowmobile operator which oc-
curred when his vehicle struck a steel cable strung between two trees on
a town's conservation land, wherein the plaintiff alleged wilful, wanton,
and reckless conduct on the part of both the town and a user of the
land whom the town had permitted to erect the cable, it was error to
grant summary judgment for the defendants where the record
presented a genuine issue of material fact whether a reasonable person
in the defendants' position, with knowledge of the undisputed facts and
the inferences underlying them, would realize that the defendants' con-
duct created an easily perceptible danger of death or serious bodily
harm. [99-103]

CIVIL ACTION commenced in the Superior Court Depart-
ment on September 6, 1984.

The case was heard by *Robert J. Hallisey*, J., on motions
for summary judgment.

*Paul F. Leavis* (*Deborah M. Santello* with him) for the
plaintiff.

*Joseph P. Musacchio* for Floyd J. Loyer, Jr.

*Francis R. Fecteau* for Sudbury Nurseries, Inc.

*Paul M. Moretti* for the town of Sudbury.

GILLERMAN, J. John D. Inferrera (the decedent) died as a
result of injuries sustained when his snowmobile ran directly
into a steel cable strung between two trees located on land

[1]Of the estate of John D. Inferrera.
[2]Floyd J. Loyer, Jr., and Sudbury Nurseries, Inc.

owned by the defendant town of Sudbury (the town). The land, known as the Davis Farm Conservation Land (the Davis land), was leased in part to the defendant Sudbury Nurseries, Inc. (the nursery), and another portion was made available to the Sudbury Aircraft Modelers Club (the club) of which the defendant Floyd J. Loyer, Jr. (Loyer) was president and chief executive officer.[3] Summary judgments were granted in favor of the town and Loyer on the ground that the conduct of the defendants, as matter of law, was not wilful, wanton, or reckless,[4] and the plaintiff appealed from the final judgments.

Extensive pretrial discovery, including depositions, affidavits, and answers to interrogatories, revealed the principal events leading up to the accident; they are not in dispute. On Sunday, January 22, 1984, the decedent and five friends, all in snowmobiles, departed Concord in the direction of Sudbury. They came to abandoned railroad tracks which they followed until they reached Route 117 in Sudbury. There they crossed Route 117 and entered a small open area where they saw a sign, "No Motor Vehicles," and another sign, "Town of Sudbury Davis Farm Conservation Land." They turned back, recrossed Route 117, and continued on a route parallel to Route 117 for about two hundred feet, and

---

[3]The plaintiff brought suit against Loyer individually, not as a representative of the class composed of all the members of the club. See *DiLuzio* v. *United Elec., Radio & Mach. Wkrs. of America, Local 274*, 386 Mass. 314, 317 n.4 (1982). Nothing was made of the point by the parties, and we discuss the controversy on the basis presented to us.

[4]The original complaint against the three defendants alleged negligence only. Prior to the disposition of the claims against the other defendants, summary judgment was granted in favor of the nursery, and we summarily affirm final judgment in its favor, there being no basis in this record for its liability to the plaintiff. The lease did not identify the area demised, other than it included a minimum of thirteen acres "and anything in excess of that planted by the lessee." There is no basis in the record for any claim that the nursery had any knowledge of, responsibility for, control over, or connection with the cable with which the decedent collided. Thus the nursery owed no duty to the decedent. See *Frizzell* v. *Metropolitan Coal Co.*, 298 Mass. 189, 191 (1937); *Nelson* v. *Economy Grocery Stores Corp.*, 305 Mass. 383, 387 (1940). While the plaintiff subsequently amended the complaints against the town and Loyer to allege that their conduct was wilful, wanton, or reckless, those allegations were never made against the nursery.

then recrossed Route 117 again. At that point they turned and entered an open field; one member of the group saw a cable strung between two poles at the Route 117 entrance to the Davis land, but that member testified in deposition that the cable did not completely "block off" the entrance. There were no signs prohibiting motor vehicles at that point. The only sign at that entrance to the Davis land announced the presence of the "Sudbury Model Aircrafters Club." The group turned into the field because, according to the filed affidavit of one member of the group, they saw "a ski mobile trail off to the right." The group followed the trail which probably followed the service road for the Davis land. The service road was used in the maintenance of the Davis land and to gain entrance to the club's "airfield."

The decedent's snowmobile led the group across the field, travelling at a speed estimated variously at thirty to fifty miles per hour. At the far end of the field there was a line of trees which, it seems, marked the end of the town's land and the beginning of private property. There was a gap in the tree line toward which the decedent headed, following the snowmobile trail. At the gap, suspended between two trees, was a one-half inch steel cable some two and one-half to three feet above the ground, and when the decedent made for the gap he collided with the cable. He sustained a fractured cervical spine, a fractured mandible, and a lacerated trachea from which he shortly died. On one of the trees from which the cable hung was a "no trespassing" sign, "badly damaged from bullet holes and . . . [not visible] until you were right on top of it," according to a member of the group. The cable was unpainted, and no markers, or the like, were suspended from the cable. There was some evidence that a piece of blue plastic was on or near one end of the cable to mark the prohibition against hunting in the area.

The group had entered a parcel of land which had been leased to the nursery under a written lease which (i) excluded a portion reserved for use as a model airplane landing field, and (ii) provided that the "public shall have the right of access to the boundary areas and vehicle road-

ways of the premises for passive recreation, including . . . nature walks and cross-country skiing."

The supervisor of parks, John B. Braim, testified in deposition that, prior to the accident, the town had completely "lost" an airfield for model airplanes as a result of vandalism, and on a number of occasions the airfield had been damaged by motor bikes and four-wheel drive vehicles. Over the years he had had a number of conversations with the club "to try and resolve a problem that both of us were concerned about." Within two years prior to the accident, Braim authorized the club[5] to put up a cable both at the Route 117 entrance and at the other end of the service road (where the accident occurred) in order, he said, "to prevent nonauthorized vehicles from entering the park or entering the area." By "vehicles" Braim testified that he meant both two-wheel motor bikes as well as four-wheel vehicles.

Braim had not ordered anything to be hung on the cable to make it "more visible."[6] Braim acknowledged that "if we saw a problem [with the cable] we would repair it" and that the club had no responsibility for maintaining the Davis land. From these acknowledgments, the plaintiff was entitled to the inference that the town had the responsibility of maintaining the cable.

The plaintiff argues that the judge was wrong in ruling that the decedent was a trespasser on the Davis land because the public was invited on to the land for "passive recreation," and Braim acknowledged that fact.[7] The issue does not require extended discussion. In the context of this case, "passive recreation" did not include snowmobiles travelling at thirty to fifty miles per hour. This is made abundantly clear

---

[5]Neither the plaintiff nor Loyer has made any distinction between the club and Loyer. See note 3, *supra.*

[6]It is not clear why the cable was put up on the far end of the lot where it joins private property. Public access to the Davis land was from Route 117. It would appear that the cable was put up to prevent vehicles from entering the park through the adjoining private property as well as from Route 117.

[7]The lease to the nursery expressly provided that the public had a right of access for "passive recreation."

by art. V, § 16, of the town by-law, see G. L. c. 40, § 32, which provided that the "operation of . . . [snowmobiles] on [t]own-owned property is only permitted on those areas designated for the purpose by the cognizant authority." No such permission had been granted, and the operation of the decedent's snowmobile on the Davis land made the decedent a trespasser.[8] The decedent was entitled to no greater duty of care than that the town refrain from wilful, wanton, or reckless disregard for his safety. *Schofield* v. *Merrill*, 386 Mass. 244, 245-246 (1982).

Loyer owed the same duty to the decedent as that owed by the town. Loyer did not install the cable on land controlled by the club to inhibit the conduct of club members while properly on the airfield pursuing activities for which the club was formed. Here the town authorized Loyer to construct the offending cable on land of the town in order to keep out those vehicles not permitted on the Davis land, and the town, by its own admission, retained responsibility for the maintenance of the cable. Compare *Sarna* v. *American Bosch Magneto Corp.*, 290 Mass. 340, 345-346 (1935). On the issue of duty, then, the judge was not in error.

The plaintiff also argues that the judge was in error when he ruled, as matter of law, that the conduct of the town and of Loyer was not reckless. We think the plaintiff is correct and that on the present state of the record the question of recklessness should have gone to the jury. Restatement (Second) of Torts § 500 (1964), frequently cited and relied upon

---

[8]Even if the decedent had been expressly or impliedly invited on to the Davis land, see *Gage* v. *Westfield*, 26 Mass. App. Ct. 681, 695 n.8 (1988), there is a provision in G. L. c. 21, § 17C, as inserted by St. 1972, c. 575, that "[a]n owner of land who permits the public to use such land for recreational purposes without imposing a charge or fee therefor . . . shall not be liable to any member of the public who uses said land . . . for injuries to person . . . sustained by him while on said land in the absence of wilful, wanton or reckless conduct by such owner. . . ." The town was entitled to the benefit of c. 21, § 17C. *Anderson* v. *Springfield*, 406 Mass. 632, 634 (1990). The town's duty to the decedent was the same whether or not he was a trespasser.

by the Supreme Judicial Court and this court,[9] states: "The actor's conduct is in reckless disregard of the safety of another if he does an act . . . knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." The type of conduct involved, explains comment a, is where the actor knows, or has reason to know, of facts which create a high degree of risk of physical harm to another, but the actor "does not realize or appreciate the high degree of risk involved, although a reasonable man in his position would do so. An objective standard is applied to him. . . ." Reckless conduct, the comment adds, involves "an easily perceptible danger of death or substantial physical harm. . . ." Quite aside from the issue of responsibility for the risk created, "the gravity of the danger posed by the . . . [unmarked cable] was demonstrated by the injuries to the plaintiff." *Everett* v. *Bucky Warren, Inc.*, 376 Mass. 280, 291 (1978).

We state the facts which a jury might find on the basis of the record. The town and Loyer both knew that unauthorized vehicles persistently travelled on the Davis land. They knew that the unauthorized vehicles included two-wheel motor bikes, and they should have known, even if they did not, that the frequently unprotected upper body of the driver of a motor bike was some three feet from the ground. The foreseeability of the risk to those who drove motorbikes on the Davis land without permission included the foreseeable risk to those who drove snowmobiles without permission. Knowing of such trespassers, the town posted a "No Motor Vehicles" sign at one point on the Davis land but did not post that sign at the entrance to the land where the service road begins — even

---

[9]Illustrative cases are *O'Leary's Case*, 367 Mass. 108, 116 (1975); *Gauvin* v. *Clark*, 404 Mass. 450, 451 (1989); *Worcester Ins. Co.* v. *Fells Acres Day School, Inc.*, 408 Mass. 393, 411 (1990); *DiGloria* v. *Chief of Police of Methuen*, 8 Mass. App. Ct. 506, 513 (1979); *Memmolo's Case*, 17 Mass. App. Ct. 407, 412 (1984).

though that is the point of entry most likely to be used by trespassing vehicles. The cable at the far end of the road appeared without warning to anyone using the road. The cable itself was not suspended between prominent posts that might well suggest an obstruction — it was suspended in an unlikely fashion between two trees that suggested a makeshift arrangement. The cable was not painted or colored in any fashion; there were no streamers or markers suspended from the cable; and there were no warning signs as one approached the suspended cable. Over a period of the two years it had been exposed to the weather, and the unmarked steel cable may well have been difficult to identify quickly, especially against a background of tree trunks in the winter. The "no trespassing" sign merely told the viewer standing on the far end of the Davis land that the land beyond was private property.

On the basis of these facts, which either are undisputed or are inferences from underlying facts drawn, as they must be, favorably to the plaintiff, see *Attorney Gen.* v. *Bailey*, 386 Mass. 367, 371, cert. denied, 459 U.S. 970 (1982), the judge was in error when he concluded that the plaintiff "failed to produce any evidence which indicates that either defendant [the town or Loyer] knew or should have known that snowmobiles or cyclists used the road and would be, in all probability, in danger of serious injury." *Johnson* v. *Schafer*, 110 Wash. 2d 546 (1988), relied upon by the judge is distinguishable. There the cable with which the motorbike collided was marked with yellow ribbons, signs were posted at the road's entrance, and there was no evidence that the defendants knew, or had reason to know, that a trespassing motorcyclist would use the road.

The genuine issue is whether, on the facts that have been recited, a reasonable person in the position of the defendants, and knowing those facts, would realize that the conduct of the defendants created an easily perceptible danger of death or substantial physical harm. That issue of fact is for the jury to decide, not for the judge on a motion for summary judgment. See *Attorney Gen.* v. *Bailey*, *supra* at 370. The

"application of the reasonable person standard is uniquely within the competence of the jury." *DeVaux* v. *American Home Assur. Co.*, 387 Mass. 814, 819 (1983). It is for this reason that "summary judgment is seldom sought or granted in negligence actions." *Foley* v. *Matulewicz*, 17 Mass. App. Ct. 1004, 1005 (1984); 10A Wright, Miller & Kane, Federal Practice and Procedure § 2729, at 194 (1983); Moriarty, The Law of Summary Judgment in Massachusetts, 43 (Flaschner Judicial Institute 1990), and the rule is equally applicable to actions involving allegedly reckless conduct. See *Saaybe* v. *Penn Cent. Transp. Co.*, 438 F. Supp. 65, 69 (E.D. Pa. 1977) (the issue of recklessness "must be preserved for the jury").

The judgment in favor of Sudbury Nurseries, Inc., is affirmed. The judgments against Loyer and the town are reversed.

*So ordered.*