JOHN C. MANNING, JR.[1] vs. CHRISTOPHER NOBILE & another.[2]

Suffolk. September 4, 1991. - December 11, 1991.

Present: ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Statute*, Construction. *Wilful, Wanton, or Reckless Conduct. Practice, Civil*, Summary judgment. *Negligence*, Serving alcoholic liquors to guest. *Alcoholic Liquors*, Liability of host, Motor vehicle.

The provisions of G. L. c. 231, § 85T, were applicable to a hotel that rented a suite and provided snacks and alcoholic beverages to the persons who engaged the suite [385-387], and the hotel was entitled to the protection of that statute unless its actions in serving alcohol were shown to be "wilful, wanton, or reckless" [387].

A claim for injuries arising from a hotel's alleged negligent supervision of a party on its premises was governed by G. L. c. 231, § 85T, the scope of which encompasses all actions arising out of the allegedly negligent serving of alcohol. [387]

In a civil action in which the plaintiff alleged that his injuries were caused by the defendant hotel's negligent serving of alcohol to an intoxicated person, the defendant was entitled to summary judgment where there was no evidence in the record to establish any "wilful, wanton, or reckless" conduct on the part of the hotel within the meaning of G. L. c. 231, § 85T. [387-389]

In a civil action in which the plaintiff alleged that the social host of a party was liable for the plaintiff's injuries resulting from the negligent service of alcohol to the plaintiff who was an adult guest at the party, summary judgment was correctly entered for the social host, and this court declined to extend liability to such hosts in such circumstances. [389-393]

---

[1]The suit is brought on behalf of John C. Manning, Jr., by his guardians, John C. and Anne Manning.

[2]In addition to Christopher Nobile, there are four other defendants. They are: the Commonwealth Mortgage Company, Peter Collins, the Marriott Corporation, and the Jeep Corporation. The only claims before us are those against the Marriott Corporation and Christopher Nobile.

CIVIL ACTION commenced in the Superior Court Department on February 13, 1987.

The case was heard by *J. Owen Todd*, J., on motions for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Alan L. Cantor* for the plaintiffs.

*Peter L. Puciloski* (*Susan A. Hartnett* with him) for Marriott Corporation.

*Eugene F. Nowell* for Christopher Nobile.

ABRAMS, J. In June, 1986, the plaintiff, John C. Manning, Jr. (Manning), struck a tree while driving an automobile. The accident happened in the early morning, after Manning left a party hosted by a coworker, Christopher Nobile (Nobile), in a suite at the Long Wharf Marriott Hotel (Marriott). At the party, Manning consumed a substantial amount of alcohol and, on the record before us, apparently was intoxicated. At issue is the liability of Marriott and Nobile. A Superior Court judge allowed summary judgments for the Marriott Corporation and Nobile.[3] For the reasons stated in this opinion, we conclude that the judge correctly allowed the motions for summary judgments. We affirm.

1. *Facts*. On Friday, June 20, 1986, the Commonwealth Mortgage Company (Commonwealth) hosted its fiscal-year-end function at the Downtown Club in Boston. Manning, a mortgage originator at Commonwealth, attended the event;

---

[3]Manning's amended complaint, at the time the summary judgments were allowed, alleged that both Nobile and Marriott negligently provided him with alcohol when they knew or should have known that he already was intoxicated and that both defendants negligently failed to supervise the party. Manning also alleges that Marriott acted wilfully, wantonly, or recklessly in its provision of alcohol to the party. In January, 1990, the judge allowed both Marriott's and Nobile's summary judgment motions on the single count asserted against each. In May, 1990, the Superior Court judge allowed motions for separate and final judgment filed by Marriott and Nobile. See Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974). Separate judgments entered for Marriott and Nobile in June, 1990. The plaintiff filed a timely notice of appeal. We allowed the defendant Marriott's application for direct appellate review.

he was driven to the club by a colleague. The two arrived at the function between 6:30 and 6:45 P.M.

After the main celebration, Commonwealth employees were invited to attend a second, "follow-on" party at the Marriott. This event was hosted by Nobile, a senior vice president and regional manager at Commonwealth, in a suite of rooms he had rented for the evening. Commonwealth reimbursed Nobile for his expenses associated with the event. Marriott provided both snacks and alcoholic beverages for the party. Marriott's catering manager offered to provide bartenders for the evening, but Nobile declined to use them. Nobile supplied additional alcohol as well as hired his young nephew, a trained bartender, to assist in serving drinks.

Commonwealth employees began arriving at the Marriott suite between 8 and 9 P.M. Nobile's nephew made drinks for some guests; others made their own drinks. It is not entirely clear from the record how many guests actually attended the party, but Nobile had anticipated between 100 and 150 guests.[4]

As the evening progressed, Manning became noticeably intoxicated. Sometime after 10:30 P.M., Nobile detected signs of Manning's intoxication and urged him to stay the night in one of the Marriott's rooms that Nobile had reserved for that purpose. Manning refused, and Nobile then asked another employee, Peter Collins, to drive Manning home.[5] Collins, who earlier had been asked by his supervisor to serve as a designated driver, agreed. Nobile informed Manning that

---

[4]Virginia Leonard, the Marriott's catering manager at that time, said that Nobile told her on the morning of June 20, 1986, that Commonwealth employees were expected to come and go on a "flow" basis — that is, at staggered intervals. Nobile, however, could not remember whether he said this. On a motion for summary judgment, we must resolve all disputes of fact in favor of the nonmoving party, the plaintiff. We therefore assume that Nobile did not tell Marriott that the guests would be arriving and leaving on a staggered basis.

[5]Collins is also a defendant in the action below. His case is not, however, before us. On the record before us, there is no dispute as to Collins's conduct. We discuss his conduct as it is relevant to the summary judgment motions before us.

Collins would drive him home. After this exchange, Nobile took no action to prevent Manning from drinking.

Shortly after midnight, Manning and Collins left the Marriott with two others, Amy Wrigley and Martin Smith. Smith left the group, and Manning, Wrigley, and Collins walked to Collins's automobile. As the three were getting into Collins's automobile, Wrigley mentioned that she wanted to go back into the Marriott to use the bathroom. Collins volunteered to escort her. Manning, who already was in the front seat of the automobile, gestured to Collins to leave his keys in the ignition so that he could continue listening to tapes on the stereo while the other two were gone. Collins left the key in the ignition and returned to the Marriott with Wrigley.

A short time later, Collins and Wrigley came back to the spot where they had left the automobile. Neither the automobile nor Manning was anywhere in sight. Collins telephoned the police to report the theft of his car. Collins asked the police to take whatever action possible to apprehend a drunk driver.

At 12:46 A.M., Manning crashed Collins's automobile into a tree on Commonwealth Avenue. As a result of the accident, Manning suffered injuries which have left him in a persistent vegetative state. Manning, whose hospital records indicate that he had an elevated level of alcohol in his bloodstream, was charged with operating a motor vehicle while under the influence of alcohol.

2. *Summary judgment for Marriott.*[6] The motion judge concluded that Marriott was entitled to the protection of

---

[6]The Superior Court judge's orders for summary judgment for Marriott and Nobile are identical (except for the name of the defendant). The orders state, in relevant part:

"1.) There is no genuine issue of material fact but only issues of law;

"2.) G[eneral] L[aws c.] 231, § 85T, applies on the facts of this case to the defendant [Marriott/Nobile];

"3.) [Marriott's/Nobile's] conduct as alleged by [Manning's] Third Amended Complaint and submissions does not constitute willful, wanton, or reckless conduct as a matter of law;

G. L. c. 231, § 85T (1990 ed.).[7] As a result, the judge ruled
that at trial, Manning would have to demonstrate that Mar-
riott's actions were "wilful, wanton, or reckless." See note 6,
*supra.* Because the judge concluded that Manning could not
meet this burden as a matter of law, he allowed Marriott's
motion for summary judgment.

Manning argues that the language of the statute limits its
scope to the "negligent serving of alcohol to an intoxicated
person by a licensee" and that, because Marriott did not
serve Manning, the statute does not apply to the facts of his
case. Manning maintains that the Legislature only intended
to extend the statute's protection to businesses that directly
serve alcoholic beverages to customers. Manning rests his
reading of the statute on its use of the word "serve."

We do not believe that by using the word "serve," the
Legislature intended to restrict the statute's scope to cases in
which a defendant or its employee physically dispenses alco-
hol to the plaintiff. The word "serve" is a broad one. It may
mean "[t]o help persons to food," but it can also mean "[t]o
furnish [or] supply." *Webster's Third Int'l Dictionary*, 2075
(1961). When this court is confronted with a statutory ambi-
guity, its duty is to give effect to the Legislature's intent.
*Telesetsky* v. *Wight*, 395 Mass. 868, 872 (1985), and cases

---

"4.) If G. L. c. 231, § 85T, were not applicable, [Manning's] cause of
action against [Marriott/Nobile] . . . would not lie as a matter of law
under the holding in *McGuiggan* v. *New England Tel. & Tel. Co.*, 398
Mass. 152 (1986);

"5.) In addition, the conduct of [Marriott/Nobile] as alleged in . . .
[Manning's] . . . Complaint was not the proximate cause of [Manning's]
injuries since, as a matter of law, there occurred a later superseding
cause."

[7]General Laws c. 231, § 85T (1990 ed.), provides: "In any action for
personal injuries, property damage or consequential damages caused by or
arising out of the negligent serving of alcohol to an intoxicated person by a
licensee properly licensed under c[. 138] or by a person or entity serving
alcohol as an incident of its business but for which no license is required,
no such intoxicated person who causes injuries to himself, may maintain
an action against the said licensee or person or entity in the absence of
wilful, wanton, or reckless conduct on the part of the licensee or such per-
son or entity."

cited. In determining the scope of the statute, we look not only at the Legislature's words, but also at "the cause of [the statute's] enactment, the mischief or imperfection to be remedied and the main object to be accomplished." *Id.* Because the statute clearly expresses a legislative intent to protect commercial vendors from suits alleging negligence by patrons who injure themselves as a result of intoxication, we reject the plaintiff's cramped view of the statute's scope. We therefore conclude that the judge was correct in concluding that Marriott would not be liable to Manning unless its conduct was wilful, wanton, or reckless.

Manning asserts that, even if G. L. c. 231, § 85T, protects Marriott against an action for negligent provision of alcohol, Manning's claim for negligent supervision of a party on its premises is outside the statute's scope. We do not agree. Marriott's alleged failure adequately to supervise the consumption of alcoholic beverages on its premises "aris[es] out of the [allegedly] negligent serving of alcohol." G. L. c. 231, § 85T. Manning's negligent supervision claim is nothing more than a restatement of his claim for negligent provision of alcohol. The claim is therefore governed by the wilful, wanton, or reckless standard.

We have defined "wilful, wanton, or reckless"[8] conduct as: "intentional conduct, by way either of commission or of omission where there is a duty to act, which conduct involves a high degree of likelihood that substantial harm will result to another." *Commonwealth* v. *Catalina*, 407 Mass. 779, 789 (1990), quoting *Commonwealth* v. *Welansky*, 316 Mass. 383, 399 (1944). See *Desmond* v. *Boston Elev. Ry.*, 319 Mass. 13, 16 (1946). Two characteristics of wilful, wanton,

---

[8]The terms "wilful," "wanton," and "reckless" are often used interchangeably. Nothing turns on the absence of one or another of these terms. See *Gauvin* v. *Clark*, 404 Mass. 450, 451 n.2 (1989) ("The judge instructed the jury in terms of 'wilful, wanton, and reckless conduct,' . . . . For the sake of brevity, we refer only to reckless misconduct. The special note to the Restatement (Second) of Torts § 500 [1965] states that 'the conduct described in this section is often called 'wanton or wilful misconduct' both in statutes and judicial opinions.' We do not view the change in wording as imposing a different standard" [citation omitted]).

or reckless conduct distinguish it from negligence. First, the defendant must knowingly or intentionally disregard an unreasonable risk. See *Catalina, supra; Welansky, supra.* Second, the risk, viewed prospectively, must entail a "high degree of probability that substantial harm would result" to the plaintiff. *Desmond* v. *Boston Elev. Ry., supra* at 16. See Restatement (Second) of Torts § 500 (1965).

We acknowledge that "summary judgment is seldom sought or granted in negligence actions." *Inferrera* v. *Sudbury,* 31 Mass. App. Ct. 96, 103 (1991), quoting *Foley* v. *Matulewicz,* 17 Mass. App. Ct. 1004, 1005 (1984). See 10A Wright, Miller & Kane, Federal Practice and Procedure § 2729, at 194 (1983). This "rule is equally applicable to actions involving allegedly reckless conduct." *Inferrera* v. *Sudbury, supra,* citing *Saaybe* v. *Penn Cent. Transp. Co.,* 438 F. Supp. 65, 69 (E.D. Pa. 1977). See also 10A Wright, Miller & Kane, *supra* at 228-231. That rule is not absolute. See, e.g., *Hawco* v. *Massachusetts Bay Transp. Auth.,* 398 Mass. 1006 (1986) (no error in directing verdict for defendant MBTA on count alleging wilful, wanton, or reckless conduct); *Pridgen* v. *Boston Hous. Auth.,* 364 Mass. 696, 705 (1974) (actions of housing authority in allowing juvenile to arrive in a position of danger not wilful, wanton, or reckless as a matter of law). Because Marriott would not have the burden of proof at trial, it could satisfy its burden on a motion for summary judgment by establishing that Manning could not prove an essential element of his claim. *Kourouvacilis* v. *General Motors Corp.,* 410 Mass. 706, 714 (1991). *Celotex Corp.* v. *Catrett,* 477 U.S. 317, 328 (1986) (White, J., concurring). In its motion, Marriott states there is no evidence that its conduct was wilful, wanton, or reckless. With these principles in mind, we turn to the evidence.

The facts, viewing contested facts in the light most favorable to Manning, indicate that Marriott adopted a policy of requiring the presence of its bartenders at parties of more than thirty-five people. This policy was either forgotten or ignored by the catering manager, who allowed twenty-one bottles of alcohol to be sent without a Marriott bartender — .

or any bartender at all, as far as Marriott or its employees knew — to a party of between 100 and 150 people. Although there is no evidence that Marriott or its employees knew of any intoxicated guests, it received three complaints of noisy party guests spilling out from the suite into the seventh-floor halls.

There is no evidence in this record, however, to suggest that the risk of which Marriott should have been aware involved a "high degree of probability" that Manning, or any other guest, would injure himself. In his brief, Manning addresses this question: "Marriott knew that given [the] . . . circumstances a guest *might* become intoxicated; and it knew that such guest *might* operate a motor vehicle" (emphasis added). Manning's argument amounts to an assertion of two *possibilities*, the latter contingent upon the former. This by no means establishes the "high degree of probability . . . [of] substantial harm" required to prove wilful, wanton, or reckless conduct. *Desmond, supra.* Because there was no evidence of wilful, wanton, or reckless conduct and because Marriott established that proof of wilful, wanton, or reckless conduct was not likely to be forthcoming, the burden shifted to Manning to come forward "with admissible evidence of the existence of a dispute as to material facts." *Kourouvacilis, supra* at 711, quoting *Godbout v. Cousens,* 396 Mass. 254, 261 (1985). See *Celotex, supra* at 322. Manning did not meet his burden. There was no error in allowing Marriott's motion for summary judgment.

3. *Summary judgment for Nobile.* Summary judgment for Nobile was correct because Nobile, a social host, was under no duty to prevent Manning from injuring himself.[9] In

---

[9]In his complaint, Manning alleges that Nobile acted as an agent of his employer. He suggests an intermediate category, employer-host, which presumably would be held to a higher standard than a social host. We never have recognized such an intermediate category, nor do we here. Even were we to hold that an employer is under a heightened duty to control its employees' alcohol consumption at business-related functions, however, our analysis of the present case would not change. We are aware of no case in which a jurisdiction that recognizes employer-host liability has extended it to allow an intoxicated driver to recover for his or her own injuries. Cf.,

*McGuiggan* v. *New England Tel. & Tel. Co.*, 398 Mass. 152, 162 (1986), we indicated that "[w]e would recognize a social host's liability *to a person injured by an intoxicated guest's negligent operation of a motor vehicle* where a social host knew or should have known that his guest was drunk, nevertheless gave him or permitted him to take an alcoholic drink and thereafter, because of his intoxication, the guest negligently operated a motor vehicle causing the *third person's injury*" (emphasis added). Since our decision in *McGuiggan*, we have not been presented with a case governed by this dictum. This case is no exception.

We note that only three States recognize a cause of action against social hosts for injuries to third parties resulting from the negligent service of alcoholic beverages to *adult* guests.[10] See *Kelly* v. *Gwinnell*, 96 N.J. 538 (1984); *Clendenning* v. *Shipton*, 149 Cal. App. 3d 191 (4th Dist. 1983) (social host could be liable if host foresaw that injury to plaintiff was likely to occur as result of guest's intoxication); *Ashlock* v. *Norris*, 475 N.E.2d 1167 (Ind. Ct. App. 1985) (social host would be liable for harm caused by intoxicated guest who subsequently drove — even if host provided only "one more drink"). But see *Campbell* v. *Trustees of Wabash College*, 495 N.E.2d 227, 230 (Ind. Ct. App. 1986) (criticizing *Ash-*

---

e.g., *Dickinson* v. *Edwards*, 105 Wash. 2d 457 (1986) (heightened duty of employer host to injured third party). Cf. generally Comment, "Noncommercial Liquor Vendor Liability: Social Host and Employer-Host Liability in Minnesota," 9 Hamline L. Rev. 223, 269-270 (Feb. 1986) (argues for employer-host liability "based upon the theory that [employers] owe a duty to control the conduct of [employees] to prevent a risk of harm *to others* because of the [special] relation existing between" them [emphasis added]). We leave open the question whether, in an accident involving injuries to a third party, we would consider a separate standard for the employer-host.

[10]Courts have been more willing to impose liability on social hosts for injuries resulting from negligent service of alcoholic beverages to minors. See *McGuiggan*, *supra* at 158, and cases cited. Both statutory provisions and common law theories of negligence have been used to ground such actions. See *id*. See also Comment, "Social Hosts and Drunken Drivers: A Duty to Intervene?" 133 U. Pa. L. Rev. 867, 877 (April 1985); Note, "*Kelly* v. *Gwinell*: Social Host Liability — How Great a Burden?" 11 Amer. J. L. & Med. 229, 236 (1985).

*lock*).[11] We are not aware of any case in any jurisdiction in which an intoxicated adult guest was permitted to recover from a social host for the guest's own injuries. Manning cites no such case.

Manning asks us to extend the Appeals Court's holding in *O'Hanley* v. *Ninety-Nine, Inc.*, 12 Mass. App. Ct. 64 (1981), in light of our dictum in *McGuiggan* to create a cause of action against a social host for injuries sustained by an intoxicated guest. We decline to do so. Manning's argument overlooks the important "differences between the operation of a commercial establishment selling alcoholic beverages for consumption on the premises and the furnishing of alcoholic beverages to guests in one's home." *McGuiggan, supra* at 157. First, the threat of liability may offset a commercial vendor's "financial incentive to encourage drinking." *Id.* Second, the circumstances attending commercial liquor service allow for closer control and monitoring of drinking than is possible in private homes. *Id.* Third, commercial vendors generally have more experience in identifying and managing intoxicated customers. *Id.* Fourth and finally, it may be that commercial servers can be expected to insure against such liability whereas private individuals may not. *Id.*

Courts that have imposed social host liability have done so on the ground that "a social host or other noncommercial provider of alcoholic beverages owes to the general public a duty to refuse to furnish such beverages to an obviously intoxicated person if, in the circumstances, such person thereby constitutes a reasonably foreseeable danger or risk of injury to third persons." *McGuiggan, supra* at 159, quoting *Coulter* v. *Superior Court*, 21 Cal. 3d 144, 149-150 (1978). This

---

[11]In three other States, judicial attempts at imposing social host liability have been limited or reversed by statute. See *Ross* v. *Ross*, 294 Minn. 115 (1972), abrogated by Minn. Stat. § 340.95 (1982); *Coulter* v. *Superior Court*, 21 Cal. 3d 144, 149-150 (1978), abrogated by Cal. Bus. & Prof. Code § 25602 (b), (c) (West 1985); Cal. Civ. Code § 1714 (b) (West 1985); *Wiener* v. *Gamma Phi Chapter of Alpha Tau Omega Fraternity*, 258 Or. 632 (1971), limited by Or. Rev. Stat. § 30.955 (1979) (limiting social host liability to cases in which host served "visibly intoxicated" guest).

duty is based on the proposition that as between the social host and the public in general, the social host is in a far better position than third parties to prevent harm to others resulting from a guest's intoxication. As between the social host and the guest, however, the guest is in a better position to prevent harm to himself or herself. The guest can refuse to drink, can drink only in moderation, or can arrange for a driver.[12]

Courts that recognize social host liability often do so to compensate fully innocent victims and to prevent persons from driving under the influence. These courts reason that full compensation and deterrence are worth their cost in terms of chilling social activity. See *McGuiggan, supra* at 160 ("The reluctance of courts to impose liability in these circumstances has been founded, rightly or wrongly, on policy considerations, particularly consideration of the effect that a rule of social host liability would have on a multitude of personal relationships in a variety of social settings"). See also Comment, "Social Hosts and Drunken Drivers: A Duty to Intervene?" 133 U. Pa. L. Rev., 867, 870-871 (1985). Many proponents of social host liability advocate its imposition only in cases of third-party injuries. See Comment, 133 U. Pa. L. Rev., *supra* at 872 ("the lesser blameworthiness of the host dictates that we should impose liability on the host, if at all, only for injuries to innocent victims and not for injuries sustained by the drunken driver himself or herself. If the driver is seen as primarily responsible for the accident, it seems obvious that he or she should not be able to recover against the secondarily responsible host"). See also Comment, "When the Party's Over: *McGuiggan v. New England Tel. & Tel. Co.* and the Emergence of a Social Host Liability Standard in Massachusetts," 68 B.U. L. Rev. 193, 193 n.5 (1988).

Denying recovery to intoxicated social guests against their hosts will have little if any impact on deterrence of driving

---

[12]In this case, according to Nobile, there were rooms at the Marriott for guests, as well as designated drivers.

under the influence of intoxicating liquor. Social hosts, who may face liability to third persons under *McGuiggan*, will be unlikely to relax their vigilance with the knowledge that they will not be liable to the guests themselves. Indeed, in the context of claims by intoxicated guests, a rule denying recovery against social hosts may improve deterrence. Such a rule of nonliability emphasizes to persons who drink and then drive that the financial risk of self-inflicted injury (like the personal risk) lies solely on the driver. Similarly, the urgency of the compensation rationale is diminished substantially where the injured party is not an innocent third party but, rather, the drinker himself or herself. We therefore hold that Nobile was under no duty to Manning to prevent Manning's self-inflicted injuries.

*Judgments affirmed.*