Barrett, J.
This matter is before the court on the motion of the defendants, Eva Lee Maltagliati, as General Partner of 1842 Beacon Street Associates Limited Partnership, Roberto Maltagliati and Jacques Amar, hereinafter collectively referred to as “1842 Beacon St.,” for summary judgment pursuant to Mass.R.Civ.P. 56. The plaintiffs, Richard J. Serón and Albert and Diana Walton, allege that 1842 Beacon was negligent in not providing adequate security for the property located at 1842 Beacon Street in Brookline, and that this negligence caused them to incur damages.
1842 Beacon St. contends that 1) it owed no duty of care to the plaintiffs, 2) that any acts or omissions on its part were not the proximate cause of any injuries the plaintiffs may have suffered, 3) that as a matter of law it is entitled to summary judgment because commercial landlords cannot be held liable for injuries sustained in an attack within an area where the tenant has exercised exclusive control with respect to security, and 4) Diana Walton’s loss of consortium claims must fail because they are dependent on a finding of negligence against 1842 Beacon St., which must fail as a matter of law. For the following reasons, defendants, motion for summary judgment is DENIED.
BACKGROUND
On December 30, 1994, after a shooting attack on the Planned Parenthood Clinic (“Planned Parenthood”) the late John Salvi (“Salvi”) drove to 1842 Beacon Street in Brookline and proceeded to the Preterm Health Services Clinic (“Preterm”). Upon entering the office at Preterm, one of many tenants at 1842 Beacon St., Salvi shot and killed Preterm employee Lee Ann Nichols. During this tragic attack, Salvi also shot plaintiff Richard J. Serón (“Serón”), an employee of Preterm hired to perform many functions, one of which was armed security. Plaintiff Albert Walton was also hired by Preterm to perform similar duties, including armed security.
At the time of the Nichols shooting, Serón was busy stocking shelves and Walton was busy delivering air fresheners within the building. Upon hearing the initial shooting, Serón confronted Salvi and engaged in a gun battle in which he (Serón) was wounded. Walton arrived at the shooting location in time to observe the carnage and to see Salvi exiting the building.
Approximately three months prior to the shootings, Ms. Maltagliati terminated approximately three *494 “watchmen” or “guards” and replaced them with Amar. The plaintiffs contend that both Mr. and Ms. Maltagliati (as well Amar) knew of the particular risks of an armed attack at Preterm, yet reduced rather than increased the security at 1842 Beacon Street.
On approximately two occasions prior to the shooting, Salvi was actually observed within 1842 Beacon Street, and on one occasion he was even followed out of the building by Serón, who allegedly had his gun readied because of his concerns that Salvi might be dangerous. On the day of the shooting Mr. Harold Stroyman, another of the building’s on-site managers, locked the doors to the waiting area at Preterm. This, he states, was his usual practice.
Pursuant to its lease with Ms. Maltagliati, Preterm was obligated to provide police details at the property, and, for a time, did hire three Brookline Police officers to provide security up until 1993. However, at some point in 1994, prior to the shooting, Preterm discontinued the details.
Seron’s Complaint consists of eight Counts including three Counts of negligence against Ms. Maltagliati, Mr. Maltagliati and Amar, two Counts of Negligent Hiring, Retention and Supervision against Ms. Maltagliati and three Counts of Negligent Infliction of Emotional Distress against Ms. Maltagliati, Mr. Maltagliati and Amar.
The Complaint filed by Walton and his wife Diana consists of six counts, three Counts of Negligent Infliction of Emotional Distress by Walton against Mr. Magliati, Ms. Magliati and Amar, and three Counts of Loss of Consortium by his wife against the same three defendants.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989) Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Pederson, 404 Mass. at 17.
Summary judgment is not usually an appropriate vehicle for deciding negligence cases, and is seldom sought or granted. Manning v. Nobile, 411 Mass. 382, 388 (1991). “However, a judge may decide the issue as a matter of law when no rational view of the evidence permits a finding of negligence.” Mullins v. Pine Manor College, 389 Mass. 47, 56 (1983); Roderick v. Brandy Hill Co., 36 Mass.App.Ct. 948, 949 (1994). This is not such a case.
Massachusetts common law “imposes on a commercial landowner a duty to take reasonable precautions to protect persons lawfully in common areas of rental property against reasonably foreseeable risks.” Whittaker v. Saraceno, 418 Mass. 196, 198 (1994). In cases such as this one, foreseeability plays a dual role, namely to define the limits of proximate cause, and to help define the limits of the duty of care owed by the landowner. Id.
The parties in this matter to a large extent disagree on the scope of the duty owed by 1842 Beacon St. to those within the building. 1842 Beacon St. suggests that Salvi’s attack was not foreseeable, and that consequently no duty arose to protect against the kind of assault he (Salvi) executed. Serón and Walton suggest that the attack was clearly foreseeable, and that protective measures such as armed uniformed guards, bullet proof glass, metal detectors and buzzer systems were both appropriate and required in order to satisfy 1842 Beacon St.’s duty to patrons of the building.
This court is well aware of the dangers of overextending landlord liability in cases such as these, especially when the facts of the case present a vicious, inexplicable, unprovoked criminal act such as Salvi’s. However, “all of the circumstances” must be examined when defining the scope of a duty of care based on the reasonable foreseeability of harm. Whittaker, 418 Mass. at 199. In this situation, we are presented with a commercial tenant that engages in the highly controversial practice of providing abortions to its clients. This practice has historically been one which generates highly charged emotions on both sides of the issue. Indeed, the record reflects that the presence of protesters outside of Preterm was not an irregular occurrence, and that in the past protesters had actually gained access to the inside of the building for the purposes of protesting.
Protesters have also been known to escalate their activities beyond the peaceful. In fact, the record in the present case reflects both the existence of a potential bomb threat at Preterm and awareness on the part of Amar and Serón of the murders (prior to Salvi’s attack) of physicians who provided abortions in Florida.
In Irwin v. Ware, 392 Mass. 745, 756-57 (1984), the Supreme Judicial Court pointed out that “[a]s the harm which safely may be considered foreseeable to the defendant changes with the evolving expectations of a maturing society, so change the ‘special relationships’ upon which the common law will base tort liabilily for the failure to take affirmative action with reasonable care.” The record demonstrates that it was entirely foreseeable in 1994 a crazed or deranged individual such as Salvi might attempt an armed assault on an abortion clinic with the intent to cause harm to or kill someone inside.
*495 This court will not, at this juncture, expand the common law duty of protection of a landlord to those within common areas of its buildings to include those persons within an abortion clinic. Nor will it attempt to define just what type of security measures 1842 Beacon was required to provide. Independent material questions of fact exist precluding summary judgment at this time, including whether it was 1842 Beacon St.’s responsibility to follow up on Preterm’s breach of the lease agreement in not providing a uniformed police presence. Along those same lines, a question of fact exists as to whether 1842 Beacon was responsible for monitoring security provided by Preterm for itself, a responsibility Amar, to some extent, may have assumed.
Additionally, the argument that adequate protection of the common areas at 1842 Beacon Street would have prevented the attack at Preterm is compelling. Salvi did have to pass through a common area of the building to get to Preterm, and this was foreseeable. There is evidence in the record to suggest that perhaps Salvi planned his attack carefully, intentionally bypassing the Repro Clinic (“Repro”) also on Beacon Street, and directly on his route from Planned Parenthood to Preterm, due to the deterrent effect of an armed security officer outside its building, blocking access to its common area. 1842 Beacon St. argues that Salvi would not have been stopped by such a presence. In any event, that is yet another issue for trial.
With regard to the claims of negligent infliction of emotional distress and loss of consortium, Serón, and to a lesser degree Walton, have presented a sufficient (albeit in Walton’s case minimal) amount of evidence necessary to convince this court that the claims are genuine. Sullivan v. Boston Gas Company, 414 Mass. 129, 137-38 (1972). The claims will be tried. Defendants’ motion for summary judgment is DENIED.
ORDER
For the foregoing reasons it is hereby ORDERED that defendants, motion for summary judgment is DENIED.