Smith, Herman J., J.

INTRODUCTION

Plaintiff, Ellen S. MacFadyen (“MacFadyen”), injured her elbow when she tripped over a tree stump while purchasing a Christmas tree at the Star of the East Christmas Tree Farm (“SOE”), which is owned and operated by Defendant, Robert L. Maki (“Maki”). MacFadyen filed the present action against Maki, alleging negligence (Count I), gross negligence (Count II), and willful, wanton or reckless conduct on the part of Maki. Maki has cited G.L.c. 128, §2E as an affirmative defense to MacFadyen’s claims of negligence and gross negligence. This matter is now before this court on Maki’s motion for summary judgment on all counts. For the reasons discussed hereinafter, Maki’s motion is ALLOWED.

BACKGROUND

The undisputed material facts, as established by the summary judgment record and taken in a light most favorable to the non-moving party, are as follows. On December 7, 2002, MacFadyen and her husband (“the MacFadyens”) traveled to SOE to purchase a Christmas tree, where the MacFadyens had purchased a Christmas tree the previous year. After arriving at SOE, the MacFadyens boarded a tractor-trailer wagon, which SOE provided to transport customers to its various Christmas tree fields. Those fields had been blanketed by snow from a storm that had occurred the previous evening.
Upon arriving at one of the Christmas tree fields, the MacFadyens exited the wagon whereupon they were greeted by a SOE employee. The MacFadyens, accompanied by the SOE employee, then walked towards an area of the field in which Christmas trees were located. The Christmas trees had been planted in uneven rows, with some trees missing as a result of being cut down and others situated closely together.
To find a suitable Christmas tree, the MacFadyens proceeded to maneuver through the rows of trees. At some point during the course of their search, MacFadyen tripped over a tree stump, which had been covered by snow from the evening before. As she fell, MacFadyen’s right elbow struck another snow-covered tree stump, as a result of which MacFadyen fractured her elbow. Thereafter, MacFadyen underwent elbow-replacement surgery.
At the time of her fall, no SOE employee had warned MacFadyen about the presence of snow-covered tree stumps, or other potential hazards at SOE. Nor did MacFadyen observe any signs warning SOE customers of tree stumps.[1] Furthermore, the area at which MacFadyen fell had not been identified or marked in any way as hazardous, and no delineated path existed along which SOE customers could pass among the rows of trees.

DISCUSSION

I. G.L.c. 128, §2E

General Laws Chapter 128, §2E concerns liability of owners or operators of “pick-your-own” farming operations. The statute reads, in part, as follows:
No owner, operator, or employee of a farm who allows any person to enter said farm for the purpose of agricultural harvesting, including the cutting of Christmas trees under a so-called “pick-your-own” agreement shall be liable for injuries or death to persons, or damage to property, resulting from the conduct of such operation in the absence of wilful, wanton, or reckless conduct on the part of said owner, operator, or employee.
From the abOve-recited language of c. 128, §2E, the substantive function of the statute is to absolve owners or operators of “pick-your-own” farms of liability for injuries or death arising from the operation of such farms unless the conduct of the operation amounts to wilful, wanton or reckless conduct. About this effect, this court is clear. Nevertheless, this court, and, indeed, the parties, find ambiguity in the effect of the warning notice provision in c. 128, §2E on the protective force of the statute. That provision states:
Said owner or operator of said farm shall post and maintain signs which contain the warning notice specified herein. Such signs shall be placed in a location visible to persons allowed to enter said farm for the purpose of agricultural harvesting. The warning notice shall appear on a sign in black letters, with each letter to be a minimum of one inch in height and shall contain the following notice:
WARNING
Under section 2E of chapter 128 of the General Laws the owner, operator, or any employees of this farm, shall not be liable for injury or death of persons, or damage to property, resulting out of the conduct of this “pick-your-own” harvesting activity in the absence of wilful, wanton, or reckless conduct.
*252 MacFadyen asserts that the language of that provision mandates the posting of such signs for a proprietor of a “pick-your-own” farm to avail himself or herself of the protection of the statute. Mato contends, however, that the warning sign provision is not compulsory in nature in light of the practical import of the statute, and, as such, failure to post the warning notice should not eviscerate the immunity c. 128, §2E was designed to provide. Therefore, the crux of this case is the application and meaning of the warning notice requirement in c. 128, §2E. More precisely, the question for this court is whether the consequence of failing to comply with the warning notice provision of c. 128, §2E is the unavailability of the protection of the statute.
To this court’s knowledge, the question at the heart of this matter is one of first impression in this Commonwealth. In light of the novelty of the issue now before this court, it is the responsibility of this court to interpret c. 128, §2E “to make it an effectual piece of legislation in harmony with common sense and sound reason,” taking care to carry out the legislative intent. Mass. Comm’n Against Discrimination v. Liberty Mut Ins. Co., 371 Mass. 186, 190 (1976). In so doing, this court must first look to the plain language of the statute. Commonwealth v. Welch, 444 Mass. 80, 85 (2005). This court may also explore the legislative history and social context of c. 128, §2E as well as the motives of the Legislature in passing the statute. Green v. Wyman-Gordon Co., 422 Mass. 551, 554 (1996).
As noted hereinabove, the general purpose of c. 128, §2Eis clear and not the object of dispute. Instead, it is the language of the warning notice provision, and the effect thereof, that this court must consider.
As an initial matter, MacFadyen claims that the word “shall” contained in the warning notice provision makes that requirement mandatory. On the other hand, Mato argues that given the object of the statute the word “shall” should be construed in a permissive or directive sense. The word “shall,” however, is ordinarily interpreted as having a mandatory connotation, and this court finds no reason here to deviate from this accepted meaning. Hashimi v. Kalil 388 Mass. 607, 609 (1983).
Where the statutory language is clear, a statute’s words are to be accorded their ordinary meaning and approved usage. Johnson v. Dist. Att’y for the N. Dist., 342 Mass. 212, 215 (1961); Burke v. Chief of Police of Newton, 374 Mass. 450, 452 (1978). In this case, the language of the warning notice provision is clear insofar as it states that an owner or operator of a “pick-your-own” farm “shall post and maintain signs” visible to patrons indicating the excusatory effect of c. 128, §2E. A warning to the public, when the need for such warning is identified, should not be left to discretion, particularly in the circumstances of this case where the warning is necessary to elucidate the rights of “persons allowed to enter [a “pick-your-own”] farm . . .” See Commonwealth v. Kennedy, 435 Mass. 527, 530 (2001). Furthermore, ascribing a mandatory meaning to the word “shall” is consistent with the thrust of c. 128, §2E inasmuch as the warning notice provision merely involves posting a visible recitation of the statute for the accommodation and in the interests of the public. See Sterilite Corp. v. Cont’l Cas. Co., 397 Mass. 837, 839 (1987). Therefore, the language of c. 128, §2E, including the warning notice provision, appears unambiguous and in line with “the general meaning and object of the statute ...” Saccone v. State Ethics Comm’n, 395 Mass. 326, 334, 480 N.E.2d 13 (1985). Accordingly, this court concludes that the inclusion of the word “shall” within the language of the warning notice provision indicates that such notice is mandatory in its ordinary sense. This court does not believe, however, that such language was intended to have the effect to deprive the protection of c. 128, §2E as a consequence of failing to comply with the warning notice provision.
The intent of the Legislature with respect to a particular statute may be ascertained “from all [the statute’s] words . . . considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished.” Commonwealth v. Connor, 432 Mass. 635, 640 (2000). Chapter 128, §2E was presented to the Legislature as an emergency act to limit the liability of certain farming operations. Prior to enactment, the Legislature added to the statute a preamble. That preamble pronounces: “The deferred operation of this act would tend to defeat its purpose, which is to immediately limit the liability of certain farm operations, therefore, it is hereby declared to be an emergency law necessary for the immediate preservation of the public convenience.” St. 1994, c. 89, §1. The Legislature also inserted into the statute a section whereby the statute is made applicable to “causes of action accruing on or after the effective date of this act.” St. 1994, c. 89, §2. In consideration of those legislative actions, this court determines that the primary intent behind c. 128, §2E is to limit the liability of “pick-your-own” farms to encourage the continued operation of such farms. The “spirit” of the statute embraces the public demand for the services of “pick-your-own” farms, for which the statute provides an incentive for such farms to meet that demand. This intent is manifested in the language of c. 128, §2E.
Read in light of the predominant purpose of c. 128, §2E, the warning notice provision is not to be interpreted as mandatory in the sense that noncompliance with that provision abolishes the protection of the statute and exposes “pick-your-own” farms to liability. Rather, the warning notice provision merely imposes an obligation to post warning signs.
While the statute shields “pick-your-own” farms from all liability absent wilful, wanton or reckless conduct, c. 128, §2E makes no mention of the conse *253 quences of failing to comply with the warning notice provision. Instead, the language of that provision only requires the posting of the warning described in the statute. The warning notice provision does not make noncompliance with the warning notice provision a basis for liability under c. 128, §2E. Nor does the warning notice provision demand that an owner or operator of a “pick-your-own” farm warn the public of the existence of known dangerous conditions at such farms, for which the failure to do so may be a basis for liability.
Furthermore, the extreme consequence of stripping a “pick-your-own” farm of the protection of the statute because of noncompliance with the warning notice provision would deny the value of c. 128, §2E as emergency legislation. Indeed, the contemplated immediate effect of c. 128, §2E would be negated if the statute required all farms under its purview to post warning notices as a precondition to its invocation. Chapter 128, §2E acts to safeguard a “pick-your-own” farm from a cause of action accruing on the effective date of the statute. As a practical matter, the Legislature could not have intended for the warning notice provision to nullify this effect. Indeed, c. 128, §2E would still limit the liability of a “pick-your-own” farm that had yet to post a warning sign at the time of the enactment of c. 128, §2E although a cause of action may have also arisen at that time.
Since the Legislature has remained utterly silent as to the effect of nonobservance of the warning sign provision and because of the severity of the proposed remedy for that transgression, this court refuses to read into c. 128, §2E as a consequence of noncompliance with that provision the removal from under the statute of “pick-your-own” farms otherwise entitled to the protection of c. 128, §2E. If the Legislature intended such a result, it could have easily so provided. Compare G.L.c. 85, §1 ID (“By posting such a sign . . . no liability shall be incurred . . .”). Therefore, absent any provision to the contrary, this court concludes that the protection provided by c. 128, §2E remains applicable to “pick-your-own” farms in circumstances in which such farms have yet to post proper warning notices.[2]

II. Standard for Summary Judgment

This court shall grant summary judgment when the material facts are undisputed and the movant is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Comm. Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party shoulders the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). While this court is reluctant to grant summary judgment in a negligence matter, it may do so where no rational view of the evidence permits a finding of negligence. Mullens v. Pine Manor College, 389 Mass. 47, 56 (1983).

III. Negligence and Gross Negligence Claims

Although there is no reference in c. 128, §2E to negligence or gross negligence, because this court finds c. 128, §2E applicable in this case, MacFadyen’s negligence and gross negligence claims against Maki must fail. Chapter 128, §2E limits liability absent “wilful, wanton, or reckless conduct on the part of said owner, operator, or employee.” That language acknowledges the different notions of fault recognized in this Commonwealth. Specifically, this Commonwealth observes a distinction between claims of negligence, gross negligence and claims in which willful, wanton or reckless conduct is alleged. Gross negligence is said to be different in degree from ordinary negligence, and is distinguishable from wanton, wilful or reckless conduct. See Altman v. Aronson, 231 Mass. 588, 591-93 (1919).
In Sandler v. Commonwealth, 419 Mass. 334 (1995), the Supreme Judicial Court defined wilful, wanton or reckless conduct as that which “involves an intentional or unreasonable disregard of a risk that presents a high degree of probability that substantial harm will result to another . . . The risk of death or grave bodily injury must be known or reasonably apparent, and the harm must be a probable consequence of the defendant’s election to run that risk or of his failure to reasonable recognize it.” Sandler, 419 Mass. at 336. Therefore, two characteristics of willful, wanton, or reckless conduct distinguish it from negligence or gross negligence. “First, the defendant must knowingly or intentionally disregard an unreasonable risk. Second, the risk, viewed prospectively, must entail a high degree of probability that substantial harm would result to the plaintiff.” Manning v. Nobile, 411 Mass. 382, 387-88 (1991). The language of c. 128, §2E contemplates that distinction.
Chapter 128, §2E states that “pick-your-own” farms shall not be held liable for “injuries or death to persons, or damage to property, resulting from the conduct of such operation” unless such injury or death results from “wilful, wanton, or reckless conduct” on the part of an owner, operator, or employee of a “pick-your-own” farm. By identifying “wilful, wanton or reckless conduct” as the only basis for liability under the statute, c. 128, §2E sweeps into its ambit all “causes of action” short of that legal standard. Therefore, Maki must, at a minimum, have exhibited wilful, wanton or reckless conduct for liability to be *254 possible under the statute. As a result, MacFadyen cannot recover on her claims for negligence and gross negligence since proof of such causes of action would not demonstrate wilful, wanton, or reckless conduct.[3] As a result, summary judgment is appropriate as to Counts I and II of MacFadyen’s complaint. There remains, however, MacFadyen’s claim that Maki’s actions, or inaction, did constitute wilful, wanton or reckless conduct, which this court addresses below.

IV. Wilful, Wanton or Reckless Conduct

MacFadyen claims that Maki’s failure to take measures to provide safe passage through the Christmas tree farm for its customers after a snowstorm amounts to wilful, wanton or reckless conduct. Although he acknowledges that snow-covered tree stumps posed some risk to its customers, Maki argues that his conduct does not qualify as wilful, wanton or reckless. In essence, notwithstanding his apparent knowledge of the risks associated with snow-covered tree stumps, Maki asserts that MacFadyen cannot satisfy her burden tp show that he intentionally disregarded an unreasonable risk to SOE’s customers, essential elements of her claim. See Sandler, 419 Mass. at 336. While this court accepts the obviousness of the danger of concealed tree stumps, this court finds that Maki’s conduct in light of that risk do not constitute wilful, wanton or reckless conduct.
This court acknowledges that summary judgment is seldom granted in cases involving alleged wilful, wanton or reckless conduct. Inferrera v. Sudbury, 31 Mass.App.Ct. 96, 103 (1991). That rule, however, is not absolute, and it remains within the court’s discretion whether summary judgment is appropriate in a particular case. See Manning at 388.
As discussed earlier herein, wilful, wanton or reckless conduct involves an intentional or knowing disregard of an unreasonable risk that presents “a high degree of probability that substantial harm will result to another.” Id. Here, it is undisputed that Maki neither cleared the snow from the stumps nor indicated by signs or other markers the location of tree stumps concealed by snow. Nevertheless, Maki’s failure to take such steps, while questionable in retrospect, at most, may amount to negligence. Such inaction, however, does not amount to wilful, wanton or reckless conduct.
The presence of stumps and holes is a condition common to “pick-your-own” Christmas tree farms two weeks before Christmas. Such a condition would have been known to MacFadyen as well as Maki on December 7, 2002.[4] Therefore, Maki’s conduct by itself did not create an unreasonable risk to MacFadyen under the circumstances of this case. Nor does Maki’s conduct exhibit a level of indifference to the consequences of his inaction equivalent to intentional conduct. See Id. at 387. Therefore, although Maki could have done more to ensure the safety of MacFadyen, his failure to do so, without more, is insufficient to demonstrate that Maki intentionally disregarded an unreasonable risk to MacFadyen. In addition, while the evidence supports a determination that an accident of the type that occurred may have been foreseeable, there is nothing in the record indicating that such an accident was highly likely to occur at that time because of Maki’s conduct.
Therefore, this court concludes that MacFadyen has no reasonable expectation of proving that Maki was wilful, wanton or reckless with respect to the danger posed by the tree stumps. Accordingly, Maki is immune from liability under c. 128, §2E, and is entitled to summary judgment on all counts.

ORDER

For the foregoing reasons, it is hereby ORDERED that defendants,’ Robert L. Maki, d/b/a Star of the East Christmas Tree Farm and Robert L. Maki, Individually, Motion For Summary Judgment be and is ALLOWED on all counts.

With his summary judgment materials, Maki included a photograph of a sign posted at SOE that stated: “Watch Your Step for Stumps and Holes.” MacFadyen claims not to have seen such a sign at SOE and disputes that such a sign existed at the time of her fall.

There exists less extreme measures by which to prevent circumvention of the warning sign provision, such as implementing a monetary fine or suspension of operation. Nevertheless, it is up to the Legislature, not this court, to make such amendments to c. 128, §2E to prescribe the appropriate consequence for the contravention of the warning sign provision, and the Legislature is free to do as such.

The court finds it important to note that the parties agree that c. 128, §2E encompasses both negligence and gross negligence.

MacFadyen had visited SOE the year before to the accident, as well as other Christmas tree farms in the past.