CHARLOTTE KAITZ & another[1] *vs.* FOREIGN MOTORS, INC.,
& another.[2]

No. 86-1086.

Suffolk.    June 11, 1987. — December 24, 1987.

Present: ARMSTRONG, PERRETTA, & FINE, JJ.

*Practice, Civil,* Summary judgment. *Warranty. Motor Vehicle,* Repairs.
*Negligence,* Manufacturer of motor vehicle, Repairs, Design.

In an action for personal injuries and property damage arising from an auto-
mobile accident, summary judgment was correctly entered in favor of
the defendants, an automobile dealer and the manufacturer of the au-
tomobile, on claims alleging breach of warranty and negligent design
and manufacture, where the materials before the judge gave no support
to the plaintiffs' contention that the accident was caused by a defective
part that had been subject to a later recall notice. [200-201]
In an action for personal injuries and property damage suffered in a collision
resulting from a malfunction of the plaintiffs' automobile when it raced
out of control immediately after routine servicing by the defendant au-
tomobile dealer, summary judgment was improperly entered in favor of
the defendant on claims alleging negligent repair of the vehicle in ques-
tion, where the record gave rise to a reasonable inference of negligent
repair in the absence of some other, plausible suggestion of what might
have caused the accident. [201-203]

CIVIL ACTION commenced in the Superior Court Department
on August 26, 1981.

The case was heard by *George N. Hurd, Jr.,* J., on motions
for summary judgment.

*Robert Cohen (Gerard J. Powers* with him) for the plaintiffs.
*Mark S. Granger* for Foreign Motors, Inc.
*Keith C. Long* for BMW of North America, Inc.

---

[1] Louis Kaitz.

[2] BMW of North America, Inc.

ARMSTRONG, J.  The plaintiffs' action (for personal injury, property damage, and loss of consortium) was dismissed on the defendants' motions for summary judgment. The action stemmed from an automobile accident that occurred on July 31, 1980, in the outdoor parking lot of Foreign Motors, Inc., an auto dealership. Mrs. Kaitz had brought her seventeen month old BMW in that morning for a routine, 12,500 mile servicing. The car had been running perfectly up to that time. In the late afternoon the plaintiffs returned and found the serviced BMW in the parking area. Mrs. Kaitz entered the car, turned the ignition key, and, according to her deposition, shifted into drive (the car had automatic transmission) keeping her foot on the brake at all times. The engine raced, the car moved forward, and the harder she pushed the brake the faster the car went. To avoid hitting bystanders, she drove her car into a parked Mercedes and thereby brought her vehicle to a halt.

Two months after the accident, the defendant BMW of North America, Inc. (BMW), issued a recall notice for the model car driven by Mrs. Kaitz. The notice called for the replacement of damper sleeves which cover two of the three springs located on the throttle linkage system. The purpose of the springs is to return the throttle to the idle position after the accelerator is released. The recall notice indicated that under certain conditions — a hot engine coupled with very high environmental temperatures — the damper sleeves can become deformed and impede the operation of the springs. The effect would be to reduce the rate of deceleration. The Kaitzes received the recall notice in November, 1980, several months after the accident, and did not have the damper sleeves replaced with the new ones until June, 1981.

The depositions and affidavits of the Foreign Motors employees were to the effect that the servicing was uneventful — it involved checking the accelerator mechanism and brakes (which received new pads), the car performed perfectly during a test drive after the servicing, and the BMW was still performing perfectly mechanically after the collision. There is no direct evidence that any work was done to the BMW after the collision

other than body work. There was no recurrence of the problem after the collision.

The judge did not err in granting summary judgment for the defendants on the counts for breach of warranty of merchantability (against Foreign Motors) and for negligent design and manufacture (against BMW). The standard on a motion for summary judgment is for most purposes identical to that applied to a motion for a directed verdict. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322-323 (1986). See *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 873 n.1, 880 (1975) (Quirico, J., concurring in part and dissenting in part); *Fortune* v. *National Cash Register Co.*, 373 Mass. 96, 97 n.1 (1977). See also Smith & Zobel, Rules Practice § 56.1, at 348 (1977).

The breach of warranty and negligent design counts were predicated on the existence of a defect, said to be the damper sleeves that were the subject of the later recall notice. On the depositions and answers to interrogatories that were before the judge on the motion, it was clear that there was no evidence to support the plaintiffs' contention that the accident was the result of defective damper sleeves. The only direct evidence on the point was the testimony of two Foreign Motors employees, a mechanic and the service manager, both of whom stated that the throttle linkage was operating perfectly both before and after the accident. This testimony was self-serving and could be disbelieved, but disbelief would not be evidence from which the contrary could properly be found. *Commonwealth* v. *Michaud*, 389 Mass. 491, 498 (1983). *Palmer* v. *Palmer*, 23 Mass. App. Ct. 245, 251 n.5 (1986). No inference could be drawn from the accident's having happened precisely as it would if the damper sleeves became deformed, because the evidence did not support such a premise. The depositions of Mrs. Kaitz and the service manager agreed that the engine idled properly before the accident. Mrs. Kaitz was insistent on the sequence. It was only when she shifted into drive that the engine roared out of control. Her foot never left the brake. It never touched the accelerator. BMW's recall letter and the service bulletin to dealers described only one result of the de-

forming of the damper sleeves: a retarded deceleration, caused by the sleeves' interference with the return action of two of the three throttle springs. There was no evidence that the problem could occur if the accelerator had not been engaged. The only other evidence bearing on the point supports the defendants: namely, the evidence that the damper sleeves were not replaced until June, 1981, nearly a year after the accident, and after some eight or nine months of post-accident, trouble-free operation. The plaintiffs' inability to produce an expert witness[3] forecloses the possibility of their showing that defective damper sleeves might manifest their presence in some other way consistent with the established facts of the accident. On this state of the evidence, an inference that the accident was caused by defective damper sleeves would be purely conjectural and speculative.

The remaining counts were against Foreign Motors for negligent repair. On these it was error to grant summary judgment. To be sure, the plaintiffs cannot identify what it is that the Foreign Motors mechanics might have done to cause an accident to occur in the manner that Mrs. Kaitz described. It seems intrinsically implausible that a properly idling motor could be made to race by the application of resistance (i.e., shifting into drive); in common experience, the motor should not have raced unless the throttle were engaged or a source of resistance disengaged. (Hence the opinion expressed by the Foreign Motors mechanics: that Mrs. Kaitz may have thought she was pressing the brake but in reality must have been pressing the accelerator.)

However, a judge cannot take credibility into account in acting on a motion for summary judgment. *Kesler* v. *Pritchard,* 362 Mass. 132, 134 (1972). *Junkins* v. *Slender Woman, Inc.,* 7 Mass. App. Ct. 878 (1979). For these purposes it must be assumed that the accident occurred exactly as Mrs. Kaitz said it did — that she never touched the accelerator and had her foot

---

[3] As a result of a pretrial ruling based on delay in identifying expert witnesses, the plaintiffs were precluded from bringing in any expert witness of their own other than medical.

on the brake at all times. Obviously a car should not behave as her car did under those conditions. It is agreed that it functioned normally when delivered in the morning and that it was in the sole possession of Foreign Motors from that point until Mrs. Kaitz started it just before the accident. Foreign Motors' exclusive control and its performance of work on the accelerator mechanism, coupled with the dramatic malfunction of the car immediately thereafter, give rise to a reasonable inference of negligent repair in the absence of some other, plausible suggestion of what might have caused the incident.

At this preliminary stage of the case, we need not hold that Mrs. Kaitz' description of starting the car would necessarily be sufficient, on any state of the evidence, to justify sending the case to the jury. To be sure, the directed verdict standard is essentially that applied at the summary judgment stage; but, through the operation of other rules, doubts are resolved at the summary judgment stage in favor of the party resisting the motion, while at the directed verdict stage doubt weighs against the party having the burden of proof. "The motion for directed verdict comes after the plaintiff has presented his evidence, or at the close of the trial, so the court has a better basis on which to determine the existence of material issues." *Lies* v. *Farrell Lines, Inc.*, 641 F.2d 765, 772 (9th Cir. 1981).[4] See commentary on *Dyer* v. *MacDougall*, 201 F.2d 265 (2d Cir. 1952), in Field, Kaplan, & Clermont, Materials for a Basic Course in Civil Procedure 565-566 (5th ed. 1984). It may well be that, as Foreign Motors argues, the Kaitzes will be unable to offer evidence justifying sending the case to the jury on the negligent repair counts without the assistance of expert tes-

---

[4]The same case goes on to state (also at 772) that "[a]t each successive 'look' provided by the Rules of Civil Procedure the court's basis for taking a case from the jury broadens. All five motions serve basically the same function, but just as the summary judgment procedure affords a more efficacious method for raising the legal question of recovery or non-recovery than do the motions for dismissal for failure to state a claim and judgment on the pleadings [citing 6 Moore's Federal Practice par. 56.15(6) (2d ed. 1976)], so also are motions for directed verdict and judgment n.o.v. better procedures for disposing of cases where there is any initial doubt whether a material issue of fact exists."

timony, but that question is premature on the present record. At this stage it is only necessary to hold, as we do, that the record as it stands does not conclusively demonstrate that there is no factual basis for a finding of negligent repair.

The judgment is reversed. The order allowing the motion for summary judgment is affirmed as to the counts for breach of warranty (one and two) and negligent design and manufacture (five and six) and reversed as to the counts for negligence in repair (three and four). The case is remanded for further proceedings consistent herewith.

*So ordered.*