CITY OF CLEVELAND, Plaintiff,

v.

NATION OF ISLAM,
Defendant/Counterclaimant.

MUHAMMAD'S MOSQUE NO. 18 and
Minister Roland Muhammad,
Plaintiffs,

v.

CITY OF CLEVELAND, Defendant.

Nos. 1:95 CV 0250, 1:95 CV 0286.

United States District Court,
N.D. Ohio,
Eastern Division.

Nov. 1, 1995.

Heather D. Graham–Oliver, City of Cleveland, Department of Law, Cleveland, Ohio, for plaintiff.

Kevin F. O'Neill, Cleveland–Marshall College of Law, Cleveland, Ohio, Raymond V. Vasvari, Cleveland, Ohio and Scott T. Greenwood, Greenwood & Hudson, Cincinnati, Ohio, for defendant.

## MEMORANDUM AND ORDER

WHITE, Chief Judge.

The City of Cleveland had filed an action for declaratory judgment in the Court of Common Pleas of Cuyahoga County, Ohio concerning the Nation of Islam's, through its Local Mosque No. 18, desire to rent the Cleveland Convention Center for a men-only event. The City of Cleveland sought a declaration that an event for men only at the Cleveland Convention Center would violate Ohio Revised Code Section 4112.02(G) and Section 667.01 of the Codified Ordinances of Cleveland, Ohio and that the denial of the facility to the Nation of Islam under circumstances where it intends to deny entry to women does not violate the First Amendment to the United States Constitution. The Nation of Islam caused the case to be removed on grounds that it involved a federal question. Two days after the action was removed to federal court the Nation of Islam filed an action for preliminary and permanent injunction that was similar to its counterclaim in the City's action. The Nation of Islam asserted that refusing to lease the Cleveland Convention Center for a men-only event violated its rights under the First Amendment and Article I, §§ 3, 7 and 11 of the Ohio Constitution. The cases have been consolidated. The parties have agreed that oral argument is unnecessary.

The parties have stipulated to the following facts:

1. In these consolidated cases, Defendant/Counterclaimant Nation of Islam (No. 1:95 CV 0250) and Plaintiffs Muhammad's Mosque No. 18 and Minister Roland Muhammad (Case No. 1:95 CV 0286)—referred to collectively herein as "the Nation"—seek preliminary and permanent injunctive relief against the City of Cleveland ("the City") in order to obtain access to the City's Convention Center, Public Hall Auditorium (the "Convention Center") for a "men only" address by the Nation's leader, Minister Louis Farrakhan.

2. On September 20, 1994, Minister Roland Muhammad, on behalf of the Nation, inquired about the availability of the Convention Center for a free general admission lecture to be delivered by Minister Louis Farrakhan to a "men only" audience comprised of both members of the Nation and nonmembers.

3. On October 6, 1994, the City's Director of Parks Recreation and Properties, Oliver B. Spellman, Jr., and other City officials met with representatives of the Nation, including Minister Muhammad, concerning the Nation's proposal to lease the Convention Center for an event that was to be conducted for "men only."

4. As a result of the October 6, 1994 meeting, on October 19, 1994, Director Oliver Spellman wrote a letter to Minister Muhammad to apprise him that Ohio Revised Code Chapter 4112 and Section 667.01 of the Codified Ordinances of the City of Cleveland prohibit discrimination in public accommodations on the basis of sex and other specified grounds.

5. Director Spellman's October 19, 1994, letter also informed Minister Muhammad that the City would lease its Convention Center to the Nation, provided that it is not the Nation's intent to violate the public accommodation laws of the State of Ohio or City of Cleveland.

6. The Nation adheres to a tradition, now more than 60 years old, under which its ministers deliver separate addresses each week to their male and female constituents. For more than 60 years, the Nation has reserved Saturday mornings for "women only" meetings. Likewise, for more than 60

years, the Nation has reserved Monday evenings for the "men only" meetings.

7. Earlier in 1994, the City twice permitted the Billy Graham Crusade to hold events at the Convention Center that were promoted as single-gender events. Although the Billy Graham Women's Crusade held what was promoted as a women's event on February 25, 1994, and the Billy Graham Men's Crusade held what was promoted as a men's event on March 12, 1994, members of the opposite sex were granted entry to these meetings.

8. If the City agrees to lease the Convention Center to the Nation for a "men only" event as requested, then the City may be subjected to a complaint before the Ohio Civil Rights Commission on the basis of gender discrimination under Chapter 4112 of the Ohio Revised Code, or the initiation of a lawsuit under the same Chapter. Such a complaint may be filed by any person alleging to be aggrieved.

9. In addition, Section 667.01 of Cleveland's Codified Ordinances prohibits discrimination by any person, including the proprietor of a public facility, on the basis of gender and other grounds, and subjects the violator to a criminal fine and/or imprisonment.

10. Because the City was confronted with either a potential law suit from the Nation for an alleged violation of the Nation's First Amendment rights, or legal proceedings by any person alleging to be aggrieved on the basis of gender discrimination contrary to Chapter 4112 of the Ohio Revised Code or Section 667.01 of the City of Cleveland Codified Ordinances, on January 4, 1995, the City filed a Complaint for Declaratory Judgment in the Court of Common Pleas, Cuyahoga County (Case CV–282998).

11. The City's Declaratory Judgment seeks a declaration that conducting an event for "men only" at the Convention Center would constitute a violation of Ohio Revised Code Chapter 4112 and Section 667.01 of the Codified Ordinances of Cleveland, Ohio, and that the denial of the facility to the Nation under circumstances where it intends to deny entry to women does not violate the First Amendment rights of the Nation of Islam.

12. On August 30, 1994, during a case management conference, the City proposed to make its Convention Center available to the nation under the same terms previously enjoyed by the Billy Graham Crusade: including, *inter alia*, the freedom to promote its event as a "men only" meeting, but a concomitant requirement that women who come to the event not be barred at the door.

13. Because the Nation does not wish to compromise its religious tradition as the price for access to the Convention Center, it continues to seek declaratory and injunctive relief permitting it to restrict the event to an all-male audience.

The First Amendment to the United States Constitution provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof, or abridging the freedom of speech ..." It is made applicable to the States by the Fourteenth Amendment. *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081–82, 31 L.Ed.2d 263 (1972); *Lambs Chapel v. Center Moriches Union Free School District*, 508 U.S. 384, 386–88, 113 S.Ct. 2141, 2144, 124 L.Ed.2d 352 (1993). The government can control access to a nonpublic forum based on subject matter and speaker identify as long as the distinctions made are reasonable and are viewpoint neutral. *Id.* 508 U.S. at 392–93, 113 S.Ct. at 2147. A speaker with a religious message is entitled to the same access given to speakers whose message is nonreligious. *Id.* at 394–96, 113 S.Ct. at 2148, *Pinette v. Capitol Square Review and Advisory Board*, 30 F.3d 675, 678 (6th Cir.1994), affirmed 115 S.Ct. 2440 (1995). Speech cannot be regulated when the motivating ideology or the opinion of the speaker is the reason for the restriction. *Rosenberger v. Rector and Visitors of the University of Virginia*, —— U.S. ——, ——, 115 S.Ct. 2510, 2516, 132 L.Ed.2d 700 (1995).

The United States Supreme Court recently decided *Hurley v. Irish–American Gay, Lesbian and Bisexual Group of Boston*, —— U.S. ——, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995). In *Hurley*, gay, lesbian and bisexual descen-

dants of Irish immigrants joined together to form an organization called GLIB specifically to march in the annual St. Patrick's Day parade. The City of Boston authorized the South Boston Allied War Veterans Council (Council) to organize and conduct the parade. The Council denied GLIB's application to march. GLIB then filed a lawsuit in state court alleging that the denial of its application to march violated a state law prohibiting discrimination on account of sexual orientation in places of public accommodation. The state trial court ruled that the parade fell within the definition of a public accommodation. The Council had no written criteria and employed no particular procedures for admission, voted on new applications in batches, had occasionally admitted groups who merely showed up at the parade and did not generally inquire into the specific messages or views of the applicants. Thus, the parade was found to be a public event. The Council had asserted that the exclusion of groups with sexual themes strengthened the fact that the parade expressed traditional religious and social values. The trial court determined that GLIB was excluded because of its sexual orientation, violating the public accommodations law and that a St. Patrick's Day celebration requires diversity and inclusiveness.

The trial court further found that because of the Council's lack of selectivity in choosing participants and failure to constrict the marchers' message, there was no specific expressive purpose entitling the parade to First Amendment protection. The public accommodation statute did not require admission of GLIB but only prohibited sexual discrimination and any infringement on the Council's freedom of speech was only incidental and no greater than necessary to accomplish the statute's legitimate purpose. The Supreme Court of Massachusetts affirmed the trial court's decision.

The United States Supreme Court, in reversing the state court decision, held that a parade is a form of expression protected by the First Amendment. *Id.* at ——, 115 S.Ct. at 2345. Parades convey all sorts of messages. *Id.* GLIB's participation as a unit was for the purpose of celebrating its mem-

bers identity as openly gay or lesbian descendants of Irish immigrants, to show there are such individuals in the community and to support others like themselves who sought to march in the New York parade. *Id.* at ——, 115 S.Ct. at 2346.

■ Each participating unit affected the message conveyed by the Council so the state court's use of the public accommodation statute required the Council to alter the expressive content of the parade. *Id.* at ——, 115 S.Ct. at 2347. The Supreme Court noted that the state court's application of the statute had the effect of declaring the Council's speech itself to be the public accommodation. Then any protected individuals would have the right to participate so that any message produced by the Council would be shaped by anyone who wanted to join. *Id.* All speech involves choices of what to say or not say and a fundamental rule under the First Amendment is that one who speaks may decide what not to say. *Id.* A speaker does not have to propound a particular point of view and the government does not have the power to control that choice. *Id.* at ——, 115 S.Ct. at 2348.

■ In the present case the City of Cleveland is attempting to use a human rights statute to justify interference with the content of a private speaker's message. Minister Farrakhan wishes to adhere to a 60 year religious tradition wherein the Nation of Islam Ministers deliver separate speeches to men and women. There is one message for male constituents, another for female constituents. If the City is allowed to make the public accommodation law requiring Minister Farrakhan to speak to a mixed audience, the content and character of the speech will necessarily be changed. The City would then be regulating private speech which would be a violation of the First Amendment.

■ The City of Cleveland would not be liable if the Nation of Islam was cited for violation of the public accommodation law. As a lessor, the City would not be responsible for the torts of a tenant in which it does not participate. *Kesecker v. U.S. Dept. of Energy,* 679 F.Supp. 726, 729 (S.D.Ohio 1988). Furthermore, Ohio Revised Code

Section 4112.02(G) makes it unlawful discriminatory practice for a proprietor, employee, keeper or manager of a place of public accommodation to discriminate. It does not bar discrimination by a lessee. Thus, the Court finds that the Nation of Islam has shown a substantial likelihood of success on the merits.

Accordingly, judgment is for the Nation of Islam on its counterclaim in Case No. 1:95CV0250. The Nation of Islam's motion for preliminary and permanent injunction in Case No. 1:95CV0286 is also granted. The City of Cleveland shall lease its Convention Center to the Nation of Islam for a "men only" address by Minister Louis Farrakhan in accordance with this Memorandum.

IT IS SO ORDERED.