Donaldson *v.* Farrakhan.

MARCELINE DONALDSON & another[1] *vs.* LOUIS FARRAKHAN
& others.[2]

Middlesex. October 2, 2001. - February 13, 2002.

Present (Sitting at Salem): MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, &
CORDY, JJ.

*Practice, Civil,* Directed verdict. *Anti-Discrimination Law,* Public
accommodation. *Constitutional Law,* Freedom of association, Freedom of
speech and press.

In an action claiming that the defendants violated the plaintiffs' civil rights
under G. L. c. 272, §§ 92A and 98, when one of the plaintiffs, a woman,
was refused admittance to a theatre on the night of a speech by a leader of
the Nation of Islam, the judge was warranted in concluding that the
plaintiffs produced insufficient evidence for a reasonable jury to conclude
by a preponderance of the evidence that the speech was a public, secular
function, and therefore the plaintiffs failed to prove that the theatre was a
place of public accommodation at the time in question. [97-100]
Application of the public accommodation laws, G. L. c. 272, §§ 92A and 98,
to compel a leader of the Nation of Islam to address women in the religious
organization's meeting for men only, which addressed viewpoints specific
to men of the faith, would impermissibly interfere with the organization's
rights under the First Amendment to the United States Constitution.
[100-102]

CIVIL ACTION commenced in the Superior Court Department on
February 22, 1995.

The case was heard by *Regina L. Quinlan,* J., on a motion for
a directed verdict.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Gretchen Van Ness* for the plaintiffs.

*Denzil D. McKenzie (Wilbur P. Edwards, Jr., & Abdul Arif
Muhammad* with him) for the defendants.

IRELAND, J. The plaintiffs, Marceline Donaldson and Robert A.

[1]Robert A. Bennett.
[2]The Nation of Islam, Don Muhammad, and Muhammad's Mosque No. 11.

Bennett, claim the defendants, Louis Farrakhan, the Nation of Islam, Don Muhammad, and Muhammad's Mosque No. 11 (mosque) violated their civil rights under G. L. c. 272, §§ 92A and 98, when Marceline Donaldson was refused admittance to the Strand Theatre (theatre) on the night of a speech by Louis Farrakhan.[3] The defendants moved for a directed verdict at the close of the plaintiffs' case, which the judge granted. The plaintiffs appealed. We transferred the case to this court on our own motion. We conclude that the plaintiffs failed to produce sufficient evidence for a reasonable jury to conclude by a preponderance of the evidence that the theatre was a place of public accommodation on the night in question. We further conclude that, in any event, the application of the public accommodation laws to compel Louis Farrakhan to address women in a mosque's men's meeting would impermissibly interfere with the defendants' rights under the First Amendment to the United States Constitution. We affirm.

I. *Facts*. The relevant facts are as follows. On March 10, 1994, the plaintiffs were at their antiques shop in Cambridge when they learned that Farrakhan was to speak that evening at the theatre in the Dorchester section of Boston. The plaintiffs believed that they learned of the event through the media, but could not identify the source, or whether it was by way of advertisement or news report. The plaintiffs, who had no prior contact with Farrakhan, were interested in hearing his message. They closed their shop early that evening, and drove to the theatre.

As the plaintiffs approached the theatre, they noticed people gathering outside. They proceeded toward the door where a line was forming; Donaldson was in front of Bennett. She was ushered aside by a security official who told her that no women were allowed into the theatre. The same official waved Bennett inside, but Bennett stopped when the security official barred Donaldson's entry. Bennett tried to explain that he and Donald-

---

[3] The plaintiffs' original complaint alleged violations of both G. L. c. 12, §§ 11H and 11I, and the Massachusetts Declaration of Rights. The plaintiffs have not argued those issues on appeal, thus they are deemed waived. Mass. R. A. P. 16 (a)(4), as amended, 367 Mass. 921 (1975). See *Anthony's Pier Four, Inc. v. Crandall Dry Dock Eng'rs, Inc.*, 396 Mass. 818, 821 n.4 (1986).

son were together, but the official simply reiterated that no women were allowed to enter the theatre. The plaintiffs were upset by the incident and decided to return home.

The plaintiffs filed a complaint with the Massachusetts Commission Against Discrimination (commission) against Farrakhan, the Nation of Islam, Don Muhammad, the mosque, and the M. Harriet McCormack Center for the Arts (McCormack Center), the theatre's management company.[4] On September 29, 1995, the commission found probable cause to believe that the defendants had committed an unlawful practice in violation of the Commonwealth's antidiscrimination laws. The plaintiffs filed their complaint against the defendants in the Superior Court on February 22, 1995.

II. *Discussion.* The standard applied to a motion for a directed verdict is identical to that applied to a motion for summary judgment for most purposes. See *Kaitz* v. *Foreign Motors, Inc.,* 25 Mass. App. Ct. 198, 200 (1987), and cases cited. The judge must determine, on viewing the evidence in the light most favorable to the nonmoving party, whether a reasonable inference could be drawn in favor of the nonmoving party, or if the moving party is entitled to a judgment as a matter of law. See *Alholm* v. *Wareham,* 371 Mass. 621, 627 (1976); *Campbell* v. *Thornton,* 368 Mass. 528, 535 (1975); *W. Oliver Tripp Co.* v. *American Hoechst Corp.,* 34 Mass. App. Ct. 744, 751 (1993). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict . . . ." *Anderson* v. *Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).

The defendants' memorandum in support of their motion for a directed verdict asserted that the plaintiffs failed to introduce sufficient evidence to establish (1) any harm to Bennett, (2) any liability on the part of Farrakhan, Don Muhammad, and the Nation of Islam for the conduct of the mosque, (3) that the mosque barred Donaldson from entry into the theatre, (4) that the men's

---

[4]A notice of voluntary dismissal was entered as to the McCormack Center.

meeting constituted a public accommodation, and (5) that the defendants coerced the plaintiffs not to attend the meeting. The defendants also asserted that the application of the public accommodation law to require the admittance of women to the men's meeting would violate their constitutional rights to free speech and religion. Finally, the defendants averred that the plaintiffs failed to establish any damages.

The judge who granted the motion ruled that the theatre was not a place of public accommodation at the time the speech was held. We affirm.

A. *Sufficiency of the evidence.* The public accommodation statutes, G. L. c. 272, §§ 92A and 98, prohibit discrimination on the basis of sex, among other factors, in relation to the admission of or treatment of any person in a place of public accommodation. General Laws c. 272, § 92A, defines a place of public accommodation as "any place, whether licensed or unlicensed, which is open to and accepts or solicits the patronage of the general public," and includes "an auditorium, theatre, music hall, meeting place or hall, including common halls of buildings."

The plaintiffs were required to submit sufficient evidence for a reasonable jury to find by a preponderance of the evidence that the theatre was a place of public accommodation on the night in question. The plaintiffs attempted to meet this burden through the admission of evidence to indicate that the meeting on March 10, 1994, was not a religious men's meeting of the mosque, but a community event open to the public. The judge was warranted in concluding that the plaintiffs did not meet their burden.

Viewed in the light most favorable to them, the plaintiffs rely on the following evidence. The theatre is owned by the city of Boston and is leased to various groups and entities. A week prior to the event, on behalf of the mosque, Virginia Muhammad signed a lease with the McCormack Center. The lease stated that the use would be for a "[m]en's meeting on black on black crime, violence, and drugs in communities of color." The mosque was the only party signatory of the lease. There was evidence that the mosque was the sole producer of the men's

meeting, and that the mosque agreed to provide its own security for the event.[5]

Prior to the event, Geraldine Guardino, the executive director of the McCormack Center, expressed concern to the mosque about whether women would be admitted to the men's meeting on March 10, 1994. She telephoned the mosque and spoke with Virginia Muhammad and later with Don Muhammad about whether women were to be admitted. Guardino testified that Don Muhammad assured her that women would be admitted, and that she sent a registered letter to Muhammad to remind him of his commitment.

Don Muhammad testified that the meeting was an expanded section of the mosque's weekly religious men's meeting. Because women do not attend those weekly meetings, he said, the event was for men only. He said he did not assure Guardino that women would be admitted, but rather told her that it was a men's meeting and that women would be admitted only if there was space to accommodate them after all the men had been admitted and seated.

Craig Engerman, a member of the mosque and director of the men's class, was the head of security for the March 10 men's meeting. He testified that he understood the event to be a men's meeting of the mosque, and that Don Muhammad did not give him any specific instruction with respect to admitting women to the event. All the members of the security detail were male members of the mosque, and Engerman did not discuss with them whether women would be admitted. As members of the security team, they knew their expected role for a men's meeting.

The plaintiffs admitted videotape evidence depicting a member of the mosque security team directing women to form a separate line outside the theatre. A second admitted videotape excerpt depicted Engerman announcing to the crowd outside the

---

[5]The plaintiffs point to the testimony of Craig Engerman, a member of the mosque and director of the men's class, to suggest that other community groups sponsored the event at the theatre. The point is without merit. Engerman named other community groups as cosponsors of a different event held one month earlier. The plaintiffs cannot identify any other organization sponsoring the men's meeting.

theatre that the meeting was for "the brothers," meaning men. The plaintiffs also introduced recorded excerpts of Farrakhan's speech indicating that he was aware women had been excluded from the meeting.

The plaintiffs point to the ambiguous testimony of Craig Engerman. He testified that, when Farrakhan speaks, it is a religious event because he is a minister. The plaintiffs' trial counsel then impeached him with his deposition testimony in which he stated he did not perceive the March 10, 1994, event to be a religious event. Engerman discussed the Farrakhan speech as an outgrowth of a prior event on February 12, 1994, bringing men together at a dinner to discuss similar issues of violence and drugs in the community. The earlier dinner event was organized by a group known as the "1000 Black Men Coalition," and was sponsored by a number of community organizations both religious and secular. Engerman testified that the idea of having Farrakhan speak on these issues came from the same coalition. He then brought the idea to the attention of Don Muhammad to see whether Farrakhan would be available to speak, and as a result of Don Muhammad's efforts, Farrakhan agreed to do so. Engerman's testimony to the effect that the idea for the event arose at a meeting with other secular groups does not change the fact that the actual event was sponsored exclusively by the mosque.

The plaintiffs also point to the testimony of Geraldine Guardino, the executive director of the McCormack Center. Guardino's testimony concerning the McCormack Center's desire that the event be open to both women and men has no bearing on whether the event itself was a religious meeting. The plaintiffs ignore undisputed evidence that the mosque, an affiliate of the religion of the Nation of Islam, was the sole promoter of the March 10, 1994, event. The mosque was the only party signatory to the lease with the theatre; the mosque provided the speakers at the event; the keynote speaker was the head of the religion; and the mosque organized, funded, and provided all of the security for the event. Viewing the evidence in a light most favorable to the plaintiffs, the judge was warranted in concluding that they produced insufficient evidence for a reasonable jury to find by a preponderance of the evidence that the March

10, 1994, event was a public, secular function, and therefore the plaintiffs failed to prove that the theatre was a place of public accommodation at the time.

B. *Constitutional claim.* Although the plaintiffs failed to offer sufficient evidence to allow a reasonable jury to find that on the evening in question the theatre was a place of public accommodation under G. L. c. 272, § 92A, they make an alternative argument that we now address. In *Concord Rod & Gun Club, Inc.* v. *Massachusetts Comm'n Against Discrimination*, 402 Mass. 716 (1988) (*Concord Rod & Gun Club*), we considered whether a private membership organization with a policy of admitting only men was subject to the Massachusetts public accommodation statute. In that case, all men were eligible for club membership; to be admitted applicants merely had to demonstrate that they were eligible for a Massachusetts sporting license, and, if not yet twenty-one years of age, that they had parental permission to join. *Id.* at 719. We concluded that, because there was a "total absence of genuine selectivity in membership," the purportedly private club was in fact a place of public accommodation. *Id.* at 721. Here, the plaintiffs argue that under *Concord Rod & Gun Club, supra,* the defendants' failure to exclude members of the public on any basis other than their gender similarly brings this otherwise nonpublic event at the theatre under the public accommodation statute. We disagree.

In *Concord Rod & Gun Club, supra,* we observed that our holding that the club was a place of public accommodation did not burden any constitutionally protected freedom of association, in either of the two senses in which it has been recognized: the right "to enter into and maintain certain intimate human relationships," or "to associate for the purpose of engaging in those activities protected by the First Amendment — speech, assembly, petition for the redress of grievances, and the exercise of religion." *Id.* at 721, quoting *Roberts* v. *United States Jaycees,* 468 U.S. 609, 617-618 (1984). In contrast, First Amendment freedoms are directly implicated in this case because the defendants are associating for the explicit purpose of engaging in protected expressive activities. The event was sponsored by a religious organization, the mosque. Individuals who engage in

religious activities do so, in part, to foster and communicate a common system of beliefs and values for members and others to follow; this is constitutionally protected expressive activity.

The Nation of Islam and the local mosque include in their religious practice separate weekly meetings for men and women. This separation of the sexes is part of the belief system and has been a part of the Nation of Islam's religious practices for more than sixty years. See *Cleveland* v. *Nation of Islam*, 922 F. Supp. 56, 59 (N.D. Ohio 1995). The sincerity of these religious beliefs and practices is not for us to question. See *Boy Scouts of Am.* v. *Dale*, 530 U.S. 640, 651 (2000), citing *Democratic Party of U.S.* v. *Wisconsin ex rel. LaFollette*, 450 U.S. 107, 124 (1981), and *Thomas* v. *Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 714 (1981). Rather, we must decide whether the forced inclusion of women in the mosque's religious men's meeting by application of the public accommodation statute would significantly burden the mosque's expressive association.

"[I]ntrusion into the internal structure or affairs of an association" is one way in which government action may unconstitutionally burden this freedom. *Boy Scouts of Am.* v. *Dale, supra* at 648, quoting *Roberts* v. *United States Jaycees, supra* at 623. Such intrusion might take the form of a regulation forcing a group to accept members it does not desire. *Boy Scouts of Am.* v. *Dale, supra.* Forced inclusion of unwanted members may impair the ability of a group to express only the views it intends to express. *Id.* If the forced inclusion of an unwanted person affects in a significant way the group's ability to advocate public or private viewpoints, it is in violation of the First Amendment. *Id.*, citing *New York State Club Ass'n, Inc.* v. *City of N.Y.*, 487 U.S. 1, 13 (1988).

The record here establishes that the message sought to be conveyed at the meeting in question was one directed to the men's class, and sought to deal with issues of drugs, crime, and violence in the community, and the role the mosque perceived that the men of the community should play. According to the unchallenged testimony of Engerman, leaders of the mosque were of the view that Farrakhan might be able to "cure" some of the crime and violence occurring in the community with his words; their intention was to expose male members of the com-

munity, especially those males participating in crime and violence, to his message by holding the men's meeting. Forcing the mosque and its leaders to include women in the meeting would change the message. It would also be in direct contravention of the religious practice of the mosque. This would be a significant burden on the mosque. See *Cleveland* v. *Nation of Islam, supra*; *Hurley* v. *Irish-American Gay, Lesbian & Bisexual Group of Boston, Inc.*, 515 U.S. 557, 568 (1995), rev'g *Irish-American Gay, Lesbian & Bisexual Group of Boston* v. *Boston*, 418 Mass. 238 (1994).

To be afforded First Amendment protection, there is no requirement that an association exist for the particular purpose of disseminating a specific message. *Boy Scouts of Am.* v. *Dale, supra* at 655. It must merely engage in expressive activity that would be impaired by the unwanted inclusion. *Id.* Here the mosque's men's class was engaging in its religious meeting for men only, expressing concern for the community, and discussing the moral ideology and roles of men in addressing crime and violence in the community. The expression of religious viewpoints specific to men of the faith would have been impaired by the inclusion of women in the meeting. The admittance of male members of the public to an otherwise nonpublic mosque meeting does not bring the event within the scope of the Massachusetts public accommodation law. Holding otherwise would impermissibly burden the defendants' freedom of association under the First Amendment. *Boy Scouts of Am.* v. *Dale, supra* at 659.

*Conclusion.* We affirm the judgment and conclude that (1) the plaintiffs failed to admit sufficient evidence for a reasonable jury to conclude by a preponderance of the evidence that the Strand Theatre retained its character as a place of public accommodation on March 10, 1994, and (2) application of the public accommodation laws to require Farrakhan to address women that evening would have impaired the rights of the mosque and the Nation of Islam to free expressive association in violation of the First Amendment. In view of these conclusions, we need not address the additional arguments raised by the plaintiffs.

*Judgment affirmed.*