Gants, Ralph D., J.
At roughly 1 a.m. on Saturday, May 11, 2002, the plaintiff Robert E. Nunez, II (“Nunez”) was driving his SUV when a car driven by Lourdes Cannon (“Cannon”) proceeded through a red light and struck his car in the intersection. Nunez’s SUV rolled over and he was thrown from the vehicle and suffered serious injuries. Nunez was intoxicated at the time of the accident and contends that he would have been able to avoid the collision entirely or in part if he had not been drunk. Nunez was 19 years old when the accident occurred and unable lawfully to drink alcohol. He has filed suit against the defendant Carrabba’s Italian Grill, Inc., d/b/a Carrabba’s (“Carrabba’s”), where he drank earlier that evening, and Saugus Concessions, Inc., d/b/a “The Palace” (“Palace”), where he drank later that evening, claiming that these establishments were negligent in serving alcohol to him, an intoxicated underaged adult, and that their negligence was a contributing cause of his injuries. Both Carrabba’s and the Palace have moved for summary judgment, contending that Nunez has presented no evidence that they engaged in wilful, wanton, or reckless conduct, as required by G.L.c. 231, §85T. Nunez contends that this statute does not apply to an adult, but underage, drinker, like him, and that the evidence is sufficient to raise a genuine issue of fact as to the defendants’ negligence. After hearing, *116 the defendants’ motion for summary judgment is ALLOWED IN PART AND DENIED IN PART.
BACKGROUND
In evaluating a motion for summary judgment, I must rely on facts not in dispute as well as disputed facts viewed in the light most favorable to the nonmoving party. Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 539 (1995). Consequently, the facts stated below are presented in the light most favorable to Nunez and should not be misunderstood as findings of the Court.
On Friday night, May 10, 2002, at about 7 p.m., Nunez, then 19 years old, went to Carrabba’s with a friend. Nunez had previously worked at Carrabba’s as a waiter, and knew many of the employees. Upon his arrival, he began drinking Grey Goose vodka and soda water. Over the next two hours, he drank six of these vodka and soda drinks, and also ate dinner. He was served the alcohol by a bartender whom he knew well from his days at Carrabba’s, who knew that he was under 21 years of age. Since Nunez knew the staff, he was not asked to pay for either dinner or the drinks.
At around 9:30 p.m., Nunez left Carrabba’s and drove home. He did not recall having any difficulty walking out of Carrabba’s. Nor did he recall having driven erratically on his way home. Yet, when he arrived home, he became ill and vomited while he showered.
After showering, he got dressed and left to go to the Palace, arriving there around 11 or 11:30 p.m. Nunez had also worked for the Palace as a promoter, and knew many of the staff there as well. His purpose in going to the Palace was to see a friend, who was working there as a bartender. When he walked into the Palace, he said hello to the bouncer who was checking IDs but did not show the bouncer the fake ID he was carrying. Nunez already had and wore the bracelet that the Palace gives to customers who they believe are 21 years old and can legally drink. While at the Palace, he was served and drank two more Grey Goose vodka and soda water drinks. His friend the bartender served him these drinks knowing that he was under 21. Between midnight and 1 a.m., he left the Palace, drove his SUV to a friend’s house to see if she was home, and, not seeing her car parked outside, decided to go to his home. As his car approached the intersection at Broadway and Elwell Street in Malden, he saw the green light and “kind of punched it” to 55 or 60 miles per hour to get through the light before it turned red. When he entered the intersection, his SUV was struck by the Toyota Corolla driven by Cannon, who had failed to stop at the red light. The impact caused Nunez’s SUV to spin and then roll over, and Nunez was thrown out of the SUV because he had failed to fasten his seatbelt. A State Police Reconstruction Team concluded that, at the time of impact, Cannon’s Toyota Corolla was traveling at 11 miles per hour, while Nunez’s SUV was traveling at 47 miles per hour.
DISCUSSION
To prevail on summary judgment, the moving party must establish that there is no genuine issue of material fact on every element of a claim and that it is entitled to judgment on that claim as a matter of law. See generally Mass.R.Civ.P. 56(c); Highlands Insurance Co. v. Aerovox, Inc., 424 Mass. 226, 232 (1997). Where, as here, the party opposing summary judgment has the burden of proof at trial, the moving party is entitled to summary judgment if it “demonstrates, by reference to material described in Mass.R.Civ.P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “To be successful, a moving party need not submit affirmative evidence to negate one or more elements of the other party’s claim.” Id. It is sufficient to demonstrate that “proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
Phrased differently, summary judgment should be granted when, if the plaintiff were to prevail at trial on evidence identical to that in the summary judgment record, the court would be required to grant judgment notwithstanding the verdict, because, even when viewing the evidence in the light most favorable to the plaintiff, no reasonable jury could find in the plaintiffs favor based on that evidence. See generally Donaldson v. Farrakhan, 436 Mass. 94, 96 (2002) (“The standard applied to a motion for a directed verdict is identical to that applied to a motion for summary judgment . . .”); D'Annolfo v. Stoneham Housing Authority, 375 Mass. 650, 657 (1978) (“The standard to be used on a motion for judgment notwithstanding the verdict is the same as that on a motion for a directed verdict”); Cambridgeport Savings Bank v. Boersner, 413 Mass. 432, 438 (1992). In such cases, a trial would be a futile waste of judicial resources, because the ultimate result could not be altered by the jury’s verdict.
To resolve these motions for summary judgment, this Court must first determine whether Nunez may prevail at trial simply by proving the defendants’ negligence or whether he must prove “wilful, wanton, or reckless conduct” by the defendants, as required under G.L.c. 231, §85T.
G.L.c. 231, §85T provides:
In any action for personal injuries . . . caused by or arising out of the negligent serving of alcohol to an intoxicated person by a licensee ... , no such intoxicated person who causes injuries to himself, may maintain an action against the said licensee ... in the absence of wilful, wanton, or reckless conduct on the part of the licensee . . .
G.L.c. 231, §85T. In Tobin v. Norwood Country Club, Inc., a 17-year-old girl was a guest at a family reunion held at the Norwood Country Club. 422 Mass. 126, *117 128 (1996). She drank a great deal of alcohol at the party, quarreled with her date, decided to walk home from the party, and was killed when she walked into the highway and was struck by a passing car. Id. at 129. The Country Club, invoking G.L.c. 231, §85T, contended that, since the 17-year-old caused her own death, it could not be found liable for serving alcohol to her unless its conduct was wilful, wanton, or reckless. The Supreme Judicial Court found that G.L.c. 231, §85T did not apply when licensed commercial establishments, like the Country Club, served alcohol to minors. Id. at 136-37. The Court declared:
Section 85T reflects the Legislature’s unwillingness to allow a person who has voluntarily and responsibly put himself into a condition where his judgment and functioning are impaired to cast the blame on others, when he suffers injury as a result of that condition. That is a moral and a policy judgment that does not extend to furnishing alcohol to minors.
Id. at 136. The Court, however, expressly left open the question of whether G.L.c. 231, §85T applied when a licensed commercial establishment illegally served alcohol to an adult under the legal drinking age, that is, a person who had reached his 18th birthday but not yet reached his 21st birthday. Id. at 137 (noting that, when such a case arises, there “will be time enough to determine which definition of adulthood covers the duty we find here”). Such a case has arisen here, so the time has come to decide this question.
In order to resolve this question, it is necessary to reach back in time and examine how the law of what has become known as “dram shop liability” has evolved in this Commonwealth. In 1933, at the end of Prohibition, the Massachusetts Legislature enacted G.L.c. 138, §69 (St. 1933, c. 376, §2), which provides, “No alcoholic beverages shall be sold or delivered on any premises licensed under this chapter to an intoxicated person.” The Legislature made a violation of this provision a misdemeanor. G.L.c. 138, §62. At the same time, the Legislature repealed what was known as the Dram Shop Act, “which gave an express right of action to persons suffering damage due to a violation of the act." Adamian v. Three Sons, Inc., 353 Mass. 498, 500 (1968), citing St. 1933, c. 376, §2, repealing St. 1879, c. 297, §1 (as amended by St. 1880, c. 239, s 4, and c. 256, si). This same 1933 legislation also made it a misdemeanor for any person in a licensed establishment to sell or deliver alcohol to a person under 21 years of age. G.L.c. 138, §34 (St. 1933, c. 376, §2).[1] Consequently, as a result of this 1933 legislation, it was a crime for any licensed restaurant, bar, or night club to sell or deliver alcohol to a person who was intoxicated or under 21, but there was no statutory private right of action provided to those injured by such a violation.
In 1968, in Adamian, the Supreme Judicial Court rejected the argument that the repeal of the Dram Shop Act reflected a legislative intent to bar any private right of action against a tavern by those injured by a drunk driver. The Court reasoned, “The statute . . . was undoubtedly enacted with a purpose to safeguard, not only the intoxicated person himself, but members of the general public as well. The legislative policy, being clear, is not to be rendered futile of practical accomplishment because of the repeal... of the Dram Shop Act. . .” Adamian, 353 Mass, at 500. The Court effectively declared that a victim of a drunk driver had a common-law private right of action against the tavern that negligently continued to serve alcohol to the driver after it became apparent that he was intoxicated. The Court formally announced, “Henceforth in this Commonwealth waste of human life due to drunken driving on the highways will not be left outside the scope of the foreseeable risk created by the sale of liquor to an already intoxicated individual.” Id. at 501.
In 1981, the Appeals Court held that a tavern’s duty not to serve alcohol to an already intoxicated individual is owed, not only to the third party injured by the intoxicated person, but to the intoxicated person himself. O’Hanley v. Ninety-Nine, Inc., 12 Mass.App.Ct. 64 (1981). In O’Hanley, the plaintiff had been served six martinis and fifteen beers by the two bartenders, and then decided to dance on the bar, from which he fell, injuring his right leg. Id. at 65. The Superior Court judge had granted summary judgment in favor of the defendant tavern, but the Appeals Court reversed, concluding that “G.L.c. 138, §69 was intended to safeguard a person such as the plaintiff in the case before us.” Id. at 68-69.
In 1982, in Cimino v. Milford Keg, Inc., the Supreme Judicial Court made clear that a tavern’s duty is not simply to refuse to serve alcohol to a patron who is visibly or obviously intoxicated, but to refuse to serve alcohol to a patron who the tavern keeper “knows or reasonably should have known” is intoxicated. 385 Mass. 323, 327 (1982). Consequently, by the end of 1982, there was controlling judicial authority under the common law of Massachusetts that a tavern owed a duty both to its intoxicated patron and anyone foreseeably injured by that intoxicated patron not to serve the patron alcohol once it knew or reasonably should have known that he was intoxicated.
In 1985, the Legislature enacted G.L.c. 231, §85T, which effectively overruled O’Hanley and required an injured plaintiff who sued a tavern for serving him alcohol after he was intoxicated to prove that the tavern engaged in “wilful, wanton, or reckless conduct.” St. 1985, c. 223, §118.[2]
In 1986, the Supreme Judicial Court held that a social host could be found liable to a person injured by an adult intoxicated guest’s negligent operation of *118 a motor vehicle when the social host knew or reasonably should have known that his guest was intoxicated and yet continued to serve him alcohol at the party. McGuiggan v. New England Tel & Tel. Co., 398 Mass. 152, 162 (1986) (“We would recognize a social host’s liability to a person injured by an intoxicated guest’s negligent operation of a motor vehicle where a social host who knew or should have known that his guest was drunk, nevertheless gave him or permitted him to take an alcoholic drink and thereafter, because of his intoxication, the guest negligently operated a motor vehicle causing the third person’s injury”).[3]
In 1991, the Supreme Judicial Court held that a social host’s duty is owed only to persons injured by his intoxicated guest, not to the intoxicated guest himself. Manning v. Nobile, 411 Mass. 382, 389-93 (1991). The Court explicitly refused to extend the holding in O’Hanley beyond licensed establishments to social host liability. Id. at 391. The Court gave four reasons for refusing to impose the duty upon a social host that O’Hanley had imposed upon a licensed establishment:
Manning’s argument [to extend O’Hanley] overlooks the important “differences between the operation of a commercial establishment selling alcoholic beverages for consumption on the premises and the furnishing of alcoholic beverages to guests in one’s home.” McGuiggan, supra, 398 Mass, at 157. First, the threat of liability may offset a commercial vendor’s “financial incentive to encourage drinking.” Id. Second, the circumstances surrounding commercial liquor service allow for closer control and monitoring of drinking than is possible in private homes. Id. Third, commercial vendors generally have more experience in identifying and managing intoxicated customers. Id. Fourth and finally, it may be that commercial servers can be expected to insure against such liability whereas private individuals may not. Id.
Manning v. Nobile, 411 Mass. at 391. Therefore, after Manning, an intoxicated adult guest who injured himself while driving home from a private party may not successfully sue his social host for serving him alcohol after he became intoxicated. If he got drunk at a tavern, rather than a private party, he may prevail against the tavern only if he proves that the tavern engaged in “wilful, wanton, or reckless conduct,” in violation of G.L.c. 231, §85T, in serving him alcohol.
In 1994, the Supreme Judicial Court held that a social host does not owe any duty to his adult intoxicated guest who has injured himself even if the guest was 19 years old, and therefore below the legal drinking age of 21. Hamilton v. Ganias, 417 Mass. 666 (1994). The Court declared:
We decide this case on the broad principle that Jason Hamilton, although an underage drinker, was an adult (G.L.c. 4, §7, Fiftieth [1992 ed.]), who was responsible for his own conduct and injured himself. .. The Legislature has granted substantial rights to and has placed substantial obligations on people who are nineteen years old. Hamilton was old enough to vote (art. 3 of the Amendments to the Massachusetts Constitution), to make a valid will (G.L.c. 191, §1 [1992 ed.]), to enter into valid contracts (G.L.c. 231, §850 [1992 ed.]), to get married without parental consent (G.L.c. 207, §§7, 24 and 25 [1992 ed.]), to serve on a jury (G.L.c. 234, §1 [1992 ed.]), to work on any job (G.L.c. 149, §63 [1992 ed.]), for as many hours as he wished (G.L.c. 149, §65 [1992 ed.]), to buy and carry a firearm (G.L.c. 140, §§131 and 131E [1992 ed.]), and tobe treated as an adult in the criminal justice system (G.L.c. 119, §§52 and 74 [1992 ed.]).
Id. at 667-68. In short, after Hamilton, a social host in Massachusetts owed no duty to an adult who injured himself after getting drunk at the host’s party, regardless of whether or not the adult had reached the legal drinking age.
In 2000, the Legislature, through the Social Host Act, revised G.L.c. 138, §34 to make it a crime for anyone, including social hosts and companions, to furnish alcohol to a person under 21 years of age. See G.L.c. 138, §34, inserted by St. 2000, c. 175 (“[W]hoever furnishes . .. alcohol for a person under 21 years of age shall be punished by a fine of not more than $2,000 or by imprisonment for not more than one year or both . . .”).[4] “This portion of §34 was enacted in response to public outcry over a series of drunk driving incidents that occurred after parties at private homes.” Commonwealth v. Kneram, 63 Mass.App.Ct. 371, 373 (2005). The enactment of the Social Host Act did not change the common-law rule established in Hamilton. See Sampson v. McDougall, 60 Mass.App.Ct. 394 (2004) (no duty owed by social host or social companions to 18-year-old adult who became drunk at a party and later jumped from the top of a fence, rendering himself a quadriplegic). Indeed, the Appeals Court in Sampson made no mention of the change in §34 accomplished by the Social Host Act in finding that a social host continued to owe no duty to an under - 21 adult who injured himself after becoming intoxicated at the party hosted by the defendant. Id.
In 1996, as noted above, the Supreme Judicial Court in Tobin, held that G.L.c. 231, §85T did not apply when a tavern (or a country club) served alcohol to minors, and that a tavern could be found liable for an intoxicated minor’s injury to herself based solely on a finding of negligence rather than of wilful, wanton, or reckless conduct. Tobin, 422 Mass, at 136-38. In Tobin, the Court explicitly recognized that a tavern owed a duty to a minor not to serve her alcohol. Id. at 133-34. In examining whether the law imposed such a duty, the Court observed, “Determinations of public policy, especially when a statute ‘undoubtedly’ identi *119 fies such a policy, are highly relevant to this inquiry." Id. at 133. Later in its decision, in finding as a matter of law that a tavern owed a duty of care to the minor, the Court declared, “The recognition of a duty in this context is reinforced by the Legislature’s consistent recognition of the danger of furnishing alcohol to minors.” Id. at 133-34.
The Tobin Court then noted that a tavern owed separate and distinct duties to two classes of patrons: intoxicated persons and minors. Id. at 136. To intoxicated persons, it owed a duly, narrowed by G.L.c. 231, §85T, to refrain from wilful, wanton, or reckless conduct in continuing to serve them alcohol after they became intoxicated. To minors, it owed a duty to refrain from serving them any alcohol, regardless of whether or not they were intoxicated. See id. As the Court explained:
The situations of those two classes are quite different. A person who is already intoxicated has voluntarily put himself in that condition, and the law is concerned that a vendor not prolong or worsen that condition. By contrast, the law forbids the serving of alcohol to minors because they are thought to be peculiarly susceptible to the effects of alcohol and less able to make decisions about what amount of alcohol they may safely consume in various situations.
Id. at 136. See also Christopher v. Father’s Huddle Café, Inc., 57 Mass.App.Ct. 217, 223 (2003). Although the Court did not explicitly so state, the Court essentially held that G.L.c. 231, §85T only narrowed the duty owed to an intoxicated person; it did not narrow or otherwise affect the duty the tavern owed to a minor. See Tobin at 136-38.
This interpretation is supported by the language of G.L.c. 231, §85T. As noted earlier, §85T provides:
In any action for personal injuries . . . caused by or arising out of the negligent serving of alcohol to an intoxicated person by a licensee ... , no such intoxicated person who causes injuries to himself, may maintain an action against the said licensee ... in the absence of wilful, wanton, or reckless conduct on the part of the licensee . . .
G.L.c. 231, §85T (emphasis added). When a minor drinks alcohol and injures herself as a result, the tavern may be negligent in serving her even if she is not intoxicated; its negligence arises solely from serving her when it knew or reasonably should have known that she was a minor. Christopher v. Father’s Huddle Café, Inc., 57 Mass.App.Ct. at 223 (“Unlike the duty of taverns to refrain from serving obviously intoxicated adults, the duty to refrain from serving alcohol to youths does not depend on whether they are or appear to be intoxicated”). Therefore, when the duty that is breached is the duty owed to a minor not to serve her alcohol, the action for personal injuries is not “caused by or arising out of the negligent serving of alcohol to an intoxicated person” but is caused by and arises out of the negligent serving of alcohol to a minor. Indeed, this negligence may cause personal injury even if the amount of alcohol consumed does not make the minor “an intoxicated person,” provided it is sufficient to constitute a substantial contributing cause of her injury. See id. at 224, 226 (jury could have inferred that serving only one beer to an 18-year-old caused him to fight and chase victim into traffic, where he was struck and killed by an oncoming vehicle).
This interpretation is also supported by the facts in Tobin. In Tobin, there was no evidence that anyone from the Country Club served the 17-year-old girl knowing she was intoxicated or with reason to know that she was intoxicated. See Tobin at 128-29. Rather, the evidence demonstrated simply that the Country Club knew that there were teenagers at the party and failed to take reasonable precautions to prevent the teenagers from drinking alcohol. See Tobin at 135. Therefore, the Country Club was not found liable because it negligently served an intoxicated person; it was found liable because it failed to take reasonable steps to prevent alcohol from being served to a teenager. Id.
In the case at bar, the plaintiff has essentially claimed that the defendant taverns have breached both their duty not to serve an intoxicated person and their duly not to serve an underaged adult. As to the first alleged breach of duly, interpreting the plain language of G.L.c. 231, §85T and applying the principles of Tobin, this Court finds that §85T governs and the plaintiff is required to prove that the taverns served him alcohol when he was intoxicated with wilful, wanton, or reckless disregard as to whether he was intoxicated. The evidence, as a matter of law, viewed in the light most favorable to the plaintiff, falls short of meeting that demanding standard. The defendants, therefore, are entitled to summary judgment as to that alleged breach of duiy.
As to the second alleged breach of dutythe taverns’ duty not to serve an underaged adultthis Court, interpreting the plain language of G.L.c. 231, §85T and applying the principles of Tobin, finds that §85T does not govern and that the plaintiff may prevail if he can show that the defendant taverns served him alcohol when they knew or reasonably should have known that he was under 21 and, therefore, under the legal age for drinking alcohol. Viewing the evidence in the light most favorable to the plaintiff, there is plainly a genuine issue of material fact as to this alleged breach of duty.
This Court reaches this conclusion mindful of the Supreme Judicial Court’s decision in Hamilton and the Appeals Court’s subsequent decision in Sampson holding that a social host owes no duly to an underaged adult who injures himself from alcohol imbibed at the defendant social host’s party. These *120 decisions reflect the appellate courts’ view, on policy grounds, that the scope of a social host’s duly to his guests should be narrower than that of a tavern to its patrons, for the four-fold reasons the Supreme Judicial Court articulated in Hamilton. They do not suggest that the appellate courts have concluded, as a matter of policy, that 18-to 20-years-olds are unworthy of the protection that the law grants them (or imposes upon them) by forbidding anyone other than a parent or grandparent from serving them alcohol. The legislative policy barring anyone, whether it be a tavern or a social host, from serving alcohol to anyone older than 18 but less than 21 is as firmly established in G.L.c. 138, §34 as is the legislative policy barring anyone from serving minors.
This Court is also mindful in reaching this conclusion that the Supreme Judicial Court in Hamilton set forth in great detail the substantial adult responsibilities granted by law to 18-to 20-year-olds. See Hamilton at 667-68. The Legislature has indeed granted these young adults substantial responsibilities but it nonetheless still concluded that they, like minors, cannot be trusted to drink alcohol responsibly. By prohibiting anyone other than a parent or grandparent from furnishing them with alcohol, the Legislature plainly has determined that anyone under 21 is “peculiarly susceptible to the effects of alcohol and less able to make decisions about what amount of alcohol they may safely consume in various situations.” Christopher v. Father’s Huddle Café, Inc., 57 Mass.App.Ct. at 223, quoting Tobin at 136. While the Supreme Judicial Court in Hamilton essentially concluded that the need to protect 18-to 20-year-olds from drinking alcohol did not overcome the four-fold policy reasons to protect social hosts from liability to intoxicated adult guests, the Supreme Judicial Court in Manning had specifically noted that these four-fold policy reasons did not apply to licensed taverns. See Manning, 411 Mass. at 391. Moreover, in Hamilton, the Supreme Judicial Court did not even specifically consider any paternalistic legislative policy because the Social Host Act had yet to be enacted and G.L.c. 138, §34 at the time of that decision barred only licensed establishments, not social hosts, from serving alcohol to persons under 21.
In short, since it is a crime for a tavern to serve alcohol to an underaged adult, a tavern has a legal duty to not serve alcohol to anyone it knows or reasonably should know is under 21 years of age. That duty is owed not only to any third party injured by the underaged adult but to the underaged adult himself, since the law seeks to protect all persons under 21 from their anticipated inability to drink responsibly. If the underaged adult can prove that a tavern breached that duty, and that he was injured as a result of the alcohol the tavern negligently permitted him to drink, he can obtain damages for the injuries caused by the defendant tavern’s negligence.
This Court will reserve for the trial court the question of whether the defendant taverns may interpose a defense of comparative negligence. The resolution of that question will not affect this summary judgment determination, since, even assuming that the defendant taverns are entitled to that defense, there is plainly a genuine issue of material fact as to whether Nunez here was comparatively negligent and, if so, to what degree.
ORDER
For the reasons stated above, this Court ORDERS as follows:
1. The defendants’ motion for summary judgment is ALLOWED as to the plaintiffs claim that the defendants breached their duty not to serve an intoxicated person. As a matter of law, there is not evidence in the summary judgment record, viewed in the light most favorable to the plaintiff, that would permit a finding that the defendant taverns served him alcohol when he was intoxicated with wilful, wanton, or reckless disregard as to whether he was intoxicated.
2. The defendants’ motion for summary judgment is DENIED as to the plaintiffs claim that the defendants breached their duty not serve a person under the age of 21.

 In 1972, the Legislature reduced the drinking age from 21 to 18, but it raised it back to 21 in 1984.

 This history makes it plain that the Appeals Court erred when it declared in Sampson v. McDougall:
The Legislature has stated that a person or entity licensed to sell alcoholic beverages, or serving alcohol as an incident of its business, may be liable for the negligent serving of alcohol to an intoxicated person who injures himself where there has been “wilful, wanton, or reckless conduct on the part of the licensee or such person or entity.” G.L.c. 231, §85T. However, that statute arose to fill a gap in the law. Absent G.L.c. 231, §85T, there would be no liability to [an intoxicated adult] even from a commercial provider of alcoholic beverages.
60 Mass.App.Ct. 394, 399 (2004). As a result of the Appeals Court’s own decision in O'Hanley, if G.L.c. 231, §85T had never been enacted, there would indeed be liability to an intoxicated adult from the licensed establishment that negligently served that intoxicated adult. G.L.c. 231, §85T narrowed the scope of that liability to require wilful, wanton, or reckless conduct rather than mere negligence: it did not create liability where before there was none.

 In McGuiggan, the guest was 18 years of age, but he was legally permitted to drink alcohol because, in 1978, when the incident occurred, the legal drinking age was 18. Id. at 159 n.7. The Court observed, “In deciding whether a guest was a minor or an adult, for purposes of determining the tort liability of a social host, the legal drinking age under the law at the time the alcoholic beverages are served is the appropriate consideration.” Id.

 G.L.c. 138, §34 provides an exception for parents or grandparents who provide alcohol at their home to children or grandchildren.